[No. 56535–0.   En Banc.   May 3, 1990.]

THE STATE OF WASHINGTON, *Petitioner*, v. CLYDE
DALE LEECH, *Respondent*.

*Norm Maleng, Prosecuting Attorney, Cynthia S.C. Gannett, Senior Appellate Attorney,* and *Lee D. Yates, Senior Deputy,* for petitioner.

*Clyde Dale Leech,* pro se, and *Theresa Doyle* of *Washington Appellate Defender Association,* for respondent.

*Seth R. Dawson, Prosecuting Attorney for Snohomish County,* and *Seth Aaron Fine, Deputy,* amici curiae for petitioner.

*Nancy L. Talner* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether a fire fighter's death occurred in the furtherance of an arson, thus rendering the arsonist liable for the crime of first degree felony murder.

On July 12, 1987, a fire broke out at the largely abandoned Crest apartment building in Seattle. Robert Earhart was one of nearly 70 City of Seattle fire fighters who responded to the alarm. Fire investigators suspected arson, and Clyde Dale Leech, the defendant herein, was arrested at the scene. The substantial evidence against the defendant included his having been seen leaving the Crest just minutes before smoke emerged from the vacant area he had been in.

Robert Earhart died of carbon monoxide poisoning while fighting the fire inside the Crest. When his body was found, his breathing apparatus was on the floor beside him and the air bottle read at or near zero. Subsequent tests showed that the breathing apparatus was not defective but was simply empty.

The defendant was charged with first degree felony murder. His main defense was that the negligence of Earhart and the Seattle Fire Department, rather than the arson, was the proximate cause of Earhart's death. A safety inspector for the Washington State Department of Labor and Industries testified that if Earhart had obeyed state

safety regulations and gotten a new air bottle when the alarm in his breathing apparatus sounded, his death could have been avoided. (The apparatus was designed to sound an alarm when less than 5 minutes of oxygen remained in the air bottle.) The inspector also testified that Earhart was allowed to freelance, or fight the fire without proper supervision. The safety inspector opined that if Earhart had been properly supervised, his death might have been avoided.

The trial court instructed the jury on both first degree felony murder and the lesser included offense of first degree arson. The jury found the defendant guilty of first degree felony murder, which is statutorily defined in this case as a death that is caused "in the course of and in furtherance of" first degree arson.

On appeal before the Court of Appeals, the defendant again argued that negligence, rather than arson, proximately caused Earhart's death. The defendant further argued that the death did not occur in the course of and in furtherance of the arson, as required by the felony murder statute. The Court of Appeals held that the arson was a proximate cause of Earhart's death but also held that the death did not occur in "furtherance of" the arson.[1] The Court of Appeals vacated the defendant's conviction of felony murder but found that the jury, by its verdict, had necessarily convicted him of the lesser included offense of first degree arson.[2] The Court of Appeals remanded the case to the Superior Court for resentencing.

Thereupon the State sought discretionary review of the Court of Appeals decision in this court and we granted review.

The main issue presented is as follows.

---

[1] *State v. Leech*, 54 Wn. App. 597, 601–02, 775 P.2d 463, *review granted*, 113 Wn.2d 1027 (1989).

[2] *Leech*, at 603.

ISSUE

Did the fire fighter's death occur in the furtherance of the arson as required by the felony murder statute?

DECISION

CONCLUSION. A death that is caused by an arson fire before it is extinguished occurs in furtherance of the arson and renders the arsonist liable for felony murder.

The statute defining the crime of first degree felony murder provides that a person is guilty of first degree murder when

> *He commits or attempts to commit the crime of* either (1) robbery, in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) *arson in the first degree,* or (5) kidnapping, in the first or second degree, *and; in the course of and in furtherance of such crime* or in immediate flight therefrom, *he, or another participant, causes the death of a person other than one of the participants; . . .*

(Italics ours.) RCW 9A.32.030(1)(c) (part).

The defendant claimed before the Court of Appeals that the felony murder statute was inapplicable to his case because (1) Earhart's negligence was not a "specifically foreseeable" result of the arson; (2) the arson fire was not the proximate cause of Earhart's death; and (3) Earhart's death was not caused in the course of and in furtherance of the arson.[3]

We agree with the Court of Appeals disposition of the defendant's first two contentions. With regard to the claim that Earhart's alleged negligence was not foreseeable, the court noted that RCW 9A.48.020 defines first degree arson as including fires that are knowingly and maliciously set which are "'manifestly dangerous to any human life, including firemen'".[4] In addition, the court cited its holding in *State v. Levage,* 23 Wn. App. 33, 35, 594 P.2d 949 (1979):

> experience teaches that one of the certainties attendant upon a hostile fire is that firemen will be called and will come. Danger

---

[3]*Leech,* at 599.

[4]*Leech,* at 600.

inheres in fire fighting. In setting a hostile fire, the arsonist can anticipate that firemen will be endangered.

■ While the arson statute and *Levage* establish that Earhart's *death* was foreseeable, they do not squarely address the issue of whether his *negligence* was foreseeable. According to one respected authority, however, foreseeability is not required in a felony murder case when death occurs as a consequence of an intervening response to the defendant's conduct.

> [C]ourts have drawn the perimeters of legal cause more closely when the intervening cause was a mere *coincidence* . . . than when it was a *response* to the defendant's prior actions (i.e., a reaction to conditions created by the defendant). Foreseeability is required as to the former, but in the latter instance the question is whether the intervening act was abnormal—that is, whether, looking at the matter with hindsight, it seems extraordinary.

2 W. LaFave & A. Scott, *Substantive Criminal Law* § 7.5, at 214 (1986).

It does not seem to us that human error in fighting a fire is an extraordinary occurrence. The implication of the defendant's argument is that an arsonist is entitled to have his fire fought in a perfect, risk–free manner by a fire department; this is not the law. Thus, the Court of Appeals properly rejected the contention that the defendant was not guilty of felony murder because Earhart's alleged negligence was not specifically foreseeable.

We also agree with the Court of Appeals conclusion that the arson fire proximately caused Earhart's death.[5] We find it sufficient to simply note here that the fire fighter's alleged negligence in using his breathing apparatus was not the sole cause of his death. Since his failure to use the apparatus would not have killed him had the defendant not set the arson fire, the defendant's conduct in setting the fire was a proximate cause of Earhart's death.[6]

---

[5]*Leech,* at 601.

[6]*Leech,* at 601.

We next turn to the Court of Appeals analysis regarding the defendant's third contention: whether Earhart's death was caused "in the course of and in furtherance of" the arson. The Court of Appeals held that Earhart's death clearly occurred "in the course of" the arson, *i.e.*, during the fire.[7] It concluded, however, that the death did not occur "in furtherance of" the arson, since the defendant did not cause Earhart's death in acting to promote or advance the arson: "by the time Earhart arrived, the fire was well under way and [the defendant] had left the premises. Thus, [the defendant] did not cause Earhart's death 'in furtherance' of the arson."[8] It is this conclusion that is at issue.

■ A homicide is deemed committed during the perpetration of a felony, for the purpose of felony murder, if the homicide is within the "res gestae" of the felony, *i.e.*, if there was a close proximity in terms of time and distance between the felony and the homicide.[9]

The defendant argues (and the Court of Appeals apparently agreed) that the act of arson is complete once a fire is set and has a potential for harm and that any subsequent death caused by the still–burning fire is not sufficiently related in time to the arson to occur within the res gestae of that felony or in the furtherance thereof. According to this argument, the arsonist is not liable for felony murder unless he or she accidentally kills someone who is attempting to prevent the arsonist from starting the fire.

This argument is addressed by a leading treatise in discussing the time connection required by felony murder statutes that use phrases such as "in the furtherance of" and "in the commission of".

---

[7]*Leech*, at 601.

[8]*Leech*, at 602–03.

[9]*State v. Dudrey*, 30 Wn. App. 447, 450, 635 P.2d 750 (1981), *review denied*, 96 Wn.2d 1026 (1982). *See also State v. Diebold*, 152 Wash. 68, 72, 277 P. 394 (1929).

Burglary is committed when the defendant breaks and enters the building with the appropriate intent; nothing further, like the caption and asportation necessary for robbery, is required for burglary. Arson is committed when the building first catches fire; the further consumption of the building by fire adds nothing further to the arson already committed. Rape is committed upon the first penetration; further sexual activity by the defendant after this initial connection adds nothing to the crime of rape already committed.

Yet for purposes of the time connection implicit in the expression "in the commission of," the crimes of arson, burglary and rape may be considered to continue while the building burns, while the burglars search the building and while the sexual connection is maintained.

2 W. LaFave & A. Scott § 7.5, at 224–25.

This point finds illustration in *State v. Glover,* 330 Mo. 709, 50 S.W.2d 1049, 87 A.L.R. 400 (1932). In *Glover,* the defendant set fire to a drugstore to collect insurance, and a fire fighter died while fighting the blaze. The defendant argued that even though the arson proximately caused the death, he was not guilty of felony murder because the homicide was not committed "in the perpetration" of the arson. The defendant argued that the arson was complete when he set fire to the drugstore and left the premises, which was long before the death occurred.[10] The Missouri Supreme Court, however, took the view that the arson continued while the building burned and that the death occurred in the perpetration of the arson.[11] "[I]t can hardly be asserted the [defendant] could absolve himself from the consequences of his act merely by withdrawing from the scene after he had put fatally destructive forces in motion to accomplish his purpose."[12]

Two recent arson–related felony murder cases similarly hold that a death caused by a burning arson fire occurs "in furtherance of" the arson for purposes of the felony murder statute. A New York appellate court upheld a defendant's

---

[10]*State v. Glover,* 330 Mo. 709, 726, 50 S.W.2d 1049, 87 A.L.R. 400 (1932).

[11]*Glover,* 330 Mo. at 726; *see also* 2 W. LaFave & A. Scott § 7.5, at 225.

[12]*Glover,* 330 Mo. at 726.

conviction for felony murder for having caused a fireman's death in *People v. Zane,* 152 A.D.2d 976, 543 N.Y.S.2d 777, 778 (1989):

> We reject defendant's contention that the felony murder statute, insofar as it applies to the crime of arson, is unconstitutionally vague because it does not define what is meant by "in the course of and *in furtherance of* such crime" . . . The statute is sufficiently definite. It is illogical to interpret the statute, as defendant contends, as meaning that the death must occur at the time of the commission of the crime; it need only be *caused* by the commission of the crime.

(First italics ours.) *Zane,* 152 A.D.2d at 976.

A federal court interpreted New York's felony murder statute similarly in *Bethea v. Scully,* 834 F.2d 257 (2d Cir. 1987). In *Bethea,* the defendant set fire to the mattress in his apartment in a fit of anger. After attempting to extinguish it, he left the building. The fire spread through the building and killed two tenants. The court affirmed the defendant's conviction for felony murder, finding that "in the course of and in furtherance of" arson, the defendant caused the death of a person.[13] We note that New York's felony murder statute has the same "in the course of and in furtherance of" language as our felony murder statute.

■ The purpose of the felony murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit.[14] In Washington, "the intent of the legislature to punish those who commit a homicide in the course of a felony under the applicable murder statute is clear."[15]

■ This court has held that "statutes should be construed to effect their purpose, and strained, unlikely, or absurd consequences resulting from a literal reading are to

---

[13]*Bethea v. Scully,* 834 F.2d 257, 258 (2d Cir. 1987).

[14]*People v. Washington,* 62 Cal. 2d 777, 781, 402 P.2d 130, 44 Cal. Rptr. 442 (1965). *See also* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 7.5, at 210 (1986).

[15]*State v. Wanrow,* 91 Wn.2d 301, 308, 588 P.2d 1320 (1978). *See also State v. Thompson,* 88 Wn.2d 13, 17, 558 P.2d 202, *appeal dismissed,* 434 U.S. 898, 54 L. Ed. 2d 185, 98 S. Ct. 290 (1977).

be avoided."[16] To apply the "in furtherance of" language only to the time in which an arson fire is being set is to achieve an absurd consequence, *i.e.*, a situation in which an arsonist whose fire kills will almost never be liable for murder.

We hold that because the fire fighter's death in this case occurred while the arson fire was still engaged, the death was sufficiently close in time and place to the arson to be part of the res gestae of that felony. Thus, the death of Seattle fire fighter Robert Earhart occurred "in furtherance of" the arson and the defendant was properly charged and convicted of the crime of felony murder; the Court of Appeals holding to the contrary is reversed.

The defendant raised other issues in the Court of Appeals that the Court of Appeals did not address because of its resolution of the principal issue in defendant's favor. We discuss them here but briefly since they do not merit extensive discussion.

The defendant contends that there was insufficient evidence to convict him of felony murder. The basis for this contention is a legal rather than factual argument, and is no more than a rephrasing of some of the causation arguments dismissed by the Court of Appeals. It is thus unnecessary to again consider them here.

The defendant next argues that the definition of knowledge instruction (instruction 10)[17] unconstitutionally permitted conviction based on an objective standard of knowledge.

The defendant contends that this instruction was found unconstitutional in *State v. Shipp,* 93 Wn.2d 510, 610 P.2d

---

[16]*State v. Neher,* 112 Wn.2d 347, 351, 771 P.2d 330 (1989); *State v. Stannard,* 109 Wn.2d 29, 36, 742 P.2d 1244 (1987).

[17] "A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.
"If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge." Instruction 10.

1322 (1980) because it permits conviction based on an objective standard of knowledge. The instruction found unconstitutional in *Shipp,* however, was based on the statutory definition of knowledge set forth in RCW 9A.08-.010(1)(b). *Shipp* concluded that use of this statutory language in the knowledge instruction violated due process because it could be interpreted by the jury as creating a mandatory inference of knowledge, while only a permissive inference is constitutionally permissible.[18]

■ Contrary to the defendant's contention, however, the definition of knowledge instruction given here was based not on the statutory language criticized in *Shipp* but on the revised version of WPIC 10.02, modified to correct the problem identified in *Shipp.* The revised pattern jury instruction states that a jury is permitted but not required to find that a person acted with knowledge if that person has information that would lead a reasonable person to believe that facts exist that constitute a crime.[19] The constitutionality of this revised language has been upheld repeatedly.[20] The definition of knowledge instruction (instruction 10) given by the trial court in this case is not the instruction condemned in *Shipp* and avoids the due process problem identified in *Shipp*; it was not unconstitutional.

The defendant next assigns error to the instruction defining proximate cause (instruction 8).[21]

---

[18] *Shipp,* at 514–16; WPIC 10.02 comment, at 53 (Supp. 1986).

[19] WPIC 10.02.

[20] *See State v. Davis,* 39 Wn. App. 916, 919–20, 696 P.2d 627 (1985); *State v. Gogolin,* 45 Wn. App. 640, 647, 727 P.2d 683 (1986); *State v. Kees,* 48 Wn. App. 76, 82, 737 P.2d 1038 (1987); *State v. Rivas,* 49 Wn. App. 677, 689, 746 P.2d 312 (1987); *State v. Barrington,* 52 Wn. App. 478, 485, 761 P.2d 632 (1988), *review denied,* 111 Wn.2d 1033 (1989).

[21] "To constitute murder, there must be a causal connection between the death of a human being and the criminal conduct of a defendant so that the act done was a proximate cause of the resulting death.

The defendant claims that this instruction unconstitutionally relieved the State of proving an element of proximate cause because it did not state that proximate cause is limited by foreseeability. Thus, as the defendant argues, the instruction defining proximate cause permitted conviction without proof that the death was a foreseeable consequence of the arson.

■ Foreseeability is not an element of proximate cause.[22] Instruction 8, based on WPIC 25.02, properly stated the law and was not unconstitutional.

The defendant next claims that the cumulative effect of these two instructions, which he claims are erroneous, violated the prohibition against cruel and unusual punishment. Since we have upheld the constitutionality of both instructions 8 and 10, this argument is without merit.

Defendant next contends that the charging of felony murder instead of manslaughter in this case violated his equal protection rights.

■ Equal protection is violated when two statutes declare the same acts to be crimes, but penalize more severely under one statute than the other.[23] As we have frequently endeavored to make clear, however, there is no equal protection violation when the crimes that the prosecuting attorney has the discretion to charge require proof of different elements.[24]

The elements of felony murder are not the same as those of first degree arson. Felony murder based on arson

---

"The term 'proximate cause' means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.

"There may be more than one proximate cause of a death." Instruction 8.

[22]*Wells v. Vancouver*, 77 Wn.2d 800, 802, 467 P.2d 292 (1970); *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969).

[23]*State v. Dictado*, 102 Wn.2d 277, 297, 687 P.2d 172 (1984); *State v. Mason*, 34 Wn. App. 514, 519, 663 P.2d 137 (1983).

[24]*In re Taylor*, 105 Wn.2d 67, 68, 711 P.2d 345 (1985) (citing *State v. Wanrow*, 91 Wn.2d 301, 312, 588 P.2d 1320 (1978)).

requires a death to result from the arson; first degree arson requires danger to human life but not death.[25]

■ The elements of felony murder also differ from those of first degree manslaughter.[26] First degree arson (a component of first degree felony murder as charged here) requires proof that a person knowingly caused a fire that is dangerous to human life.[27] First degree manslaughter, on the other hand, requires proof that a person recklessly caused a death.[28] Recklessness occurs when a person knows of or disregards a substantial risk that a harmful act may occur.[29] Knowledge of endangerment is not the same as knowledge of a risk of danger.[30] The elements of first degree felony murder thus differ from those of first degree manslaughter as well as from first degree arson, and the prosecuting attorney's decision to charge the defendant with felony murder did not violate his right to equal protection.

■ Finally, the defendant contends that the felony murder rule is unconstitutional. This court upheld the constitutionality of the felony murder rule in *State v. Wanrow*, 91 Wn.2d 301, 311, 588 P.2d 1320 (1978). The defendant urges us to reconsider our position, but cites no new reasons for doing so and points to no specific flaws in the *Wanrow* opinion. We decline to reconsider *Wanrow* or the constitutionality of the felony murder rule.

---

[25]*See* RCW 9A.32.030(1)(c); RCW 9A.48.020(1)(a), (c).

[26]*See State v. Parr*, 93 Wn.2d 95, 97, 606 P.2d 263 (1980).

[27]RCW 9A.48.020(1)(a), (c).

[28]RCW 9A.32.060(1)(a).

[29]*Parr*, at 97.

[30]*See Parr*, at 97.

The Court of Appeals is reversed and the defendant's conviction of the crime of first degree felony murder is affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.