[No. 57413-2-I. Division One. February 25, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY TYRONE ARMSTRONG, *Appellant*.

334

*David B. Koch* (of *Nielsen, Broman & Koch, PLLC*); and *Harlan R. Dorfman*, for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for respondent.

¶1 Cox, J. — Anthony T. Armstrong appeals his conviction of second degree felony murder based on the predicate felony of second degree assault. He claims the conviction violates his right to equal protection under the state and federal constitutions.

¶2 Those convicted of second degree felony murder under the current version of RCW 9A.32.050 do not constitute a suspect or semisuspect class.[1] Moreover, physical liberty is an important, but not a fundamental, right.[2] Accordingly,

---

[1] *See State v. Manussier*, 129 Wn.2d 652, 673 & n.79, 921 P.2d 473 (1996).

[2] *Id.* at 673-74 & n.77.

the proper standard of review here is rational basis review.[3] Applying that standard to the felony murder statute that is at issue in this case, we hold that the statute does not violate the constitutional right to equal protection. We affirm.

¶3 A brief statement of relevant facts provides the context for our resolution of the legal question whether the felony murder statute violates the right to equal protection. Testimony at trial indicated that Armstrong shot the victim, Mychal Alexander, following a physical altercation between the two near a Seattle playground area. Alexander was on the ground at the time of the shooting.

¶4 Armstrong claimed self-defense. He based his defense on the assertion that he believed that Alexander was also armed and was going to shoot first. Alexander died from gunshot wounds shortly after the altercation with Armstrong.

¶5 The State charged Armstrong with second degree murder, alleging both means under the current version of the statute, RCW 9A.32.050(1)(a) and (b). Specifically, the State charged intentional murder under one subsection of the statute.[4] It also charged felony murder based on the predicate crime of second degree assault under the other subsection of the statute.[5] The assault allegation was based on the assertion that Armstrong was armed with a deadly weapon during the shooting.

¶6 During trial, the court instructed the jury that it need not be unanimous as to which of the two alternative means of second degree murder Armstrong committed in order to

---

[3] See id. at 674 (citing State v. Phelan, 100 Wn.2d 508, 514, 671 P.2d 1212 (1983)).

[4] See RCW 9A.32.050(1)(a) ("A person is guilty of murder in the second degree when: With intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person . . . .").

[5] See RCW 9A.32.050(1)(b) ("A person is guilty of murder in the second degree when: He or she commits or attempts to commit any felony, including assault, other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants . . . .").

find him guilty. The jury found him guilty of second degree murder and also found that he was armed with a deadly weapon during the commission of the crime. The trial judge sentenced him to 183 months of confinement, the low end of the standard range, plus a mandatory deadly weapon enhancement.

¶7 Armstrong appeals.

## EQUAL PROTECTION AND FELONY MURDER

¶8 Armstrong argues that the felony murder statute violates his right to equal protection. We disagree.

¶9 Article I, section 12 of the Washington Constitution and the Fourteenth Amendment to the United States Constitution guarantee that similarly situated persons must receive like treatment under the law.[6] Our supreme court has consistently construed the federal and state equal protection clauses identically and considered claims arising under them to be one issue.[7]

¶10 When courts analyze equal protection claims, they apply one of three standards of review—strict scrutiny, intermediate or heightened scrutiny, or rational basis review.[8] Rational basis review, or the rational relationship test, is the most relaxed level of scrutiny. It applies when a statutory classification does not involve a suspect or semisuspect class and does not threaten a fundamental right.[9]

¶11 When a statutory classification affects only a physical liberty interest, our courts apply the deferential

---

[6] *Manussier*, 129 Wn.2d at 672 (citing *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)).

[7] *Id.* (citing *State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991)).

[8] *Id.* at 672-73.

[9] *Id.* at 673 (citing *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993)).

rational relationship test.[10] To satisfy this test, the challenged law must rest upon a legitimate state objective, and the law must be rationally related to, and not wholly irrelevant to, achieving that objective.[11] As our state supreme court has explained:

"The burden is on the party challenging the classification to show that it is 'purely arbitrary.' " The rational basis test requires only that the means employed by the statute be rationally related to a legitimate State goal, and not that the means be the best way of achieving that goal. "[T]he Legislature has broad discretion to determine what the public interest demands and what measures are necessary to secure and protect that interest."[12]

 ¶12 Our supreme court has also held that there is no equal protection violation when a statutory scheme proscribes crimes that "require proof of different elements."[13] When the crimes have different elements, the prosecutor's discretion is not arbitrary but is constrained by which elements can be proved under the circumstances.[14]

 ¶13 A statute is presumed to be constitutional, and the party challenging it bears the burden to prove that

---

[10] *State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992) (rejecting intermediate scrutiny when physical liberty interest is involved but no semisuspect class is affected).

[11] *Madison v. State*, 161 Wn.2d 85, 103, 163 P.3d 757 (2007); *Manussier*, 129 Wn.2d at 673; *Coria*, 120 Wn.2d at 171.

[12] *Manussier*, 129 Wn.2d at 673 (alteration in original) (footnotes omitted) (quoting *Coria*, 120 Wn.2d at 171-73; *State v. Ward*, 123 Wn.2d 488, 516, 869 P.2d 1062 (1994)).

[13] *State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990); *accord State v. Wanrow*, 91 Wn.2d 301, 312, 588 P.2d 1320 (1978); *State v. Williams*, 62 Wn. App. 748, 754, 815 P.2d 825 (1991) (one additional statutory element sufficient to overcome equal protection challenge).

[14] *City of Kennewick v. Fountain*, 116 Wn.2d 189, 193, 802 P.2d 1371 (1991).

it is unconstitutional beyond a reasonable doubt.[15] We review the constitutionality of a statute de novo.[16]

¶14 Here, Armstrong claims that when a person assaults another resulting in the victim's death, the statute allows the prosecutor to arbitrarily charge felony murder rather than intentional murder. Specifically, he argues that by allowing this choice, the State is relieved of the burden to prove the otherwise required mens rea of intent to kill. Moreover, according to Armstrong, the prosecutor's choice of felony murder bars the accused from obtaining a jury instruction on the lesser included offense of intentional murder, manslaughter.

¶15 We apply rational basis review to Armstrong's claims. The State treats similarly situated persons differently—those who commit an assault that results in death—by charging some of them with intentional murder and some of them with felony murder. The State, however, has a rational basis for doing so.

¶16 The legislature recently stated its purpose for enacting the felony murder rule when it rejected the reasoning of *In re Personal Restraint of Andress.*[17] The legislature stated:

> The legislature finds that the 1975 legislature clearly and unambiguously stated that any felony, including assault, can be a predicate offense for felony murder. *The intent was evident: Punish, under the applicable murder statutes, those who commit a homicide in the course and in furtherance of a felony.* This legislature reaffirms that original intent and further intends to honor and reinforce the court's decisions over the past twenty-eight years interpreting "in furtherance of" as requiring the death to be sufficiently close in time and proximity to the predicate felony. The legislature does not agree with or accept the court's findings of

---

[15] *State v. Hughes*, 154 Wn.2d 118, 132, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006).

[16] *Id.*

[17] 147 Wn.2d 602, 56 P.3d 981 (2002).

legislative intent in *State v. Andress, Docket No. 71170-4 (October 24, 2002)*, and reasserts that assault has always been and still remains a predicate offense for felony murder in the second degree.[18]

The statute is rationally related to the stated goal of punishing those who commit a homicide in the course of and in furtherance of a felony in the same manner as those who intend to kill. Given the wide latitude that courts recognize the legislature has in making this choice, it is evident that the felony murder statute is not wholly unrelated to its goal. Thus, the felony murder statute satisfies rational basis review.

¶17 In his brief, Armstrong discusses the goals of the criminal code generally, not the specific goal of the felony murder statute. He argues that the felony murder statute is not rationally related to the legislature's goals of providing fair warning of forbidden conduct, differentiating between serious and minor offenses, and prescribing proportionate penalties. In doing so, he ignores the actual goal of the felony murder statute, as expressly stated by the legislature in its response to the *Andress* case. In view of the legislature's pronouncement of its goal for this statute, we reject Armstrong's arguments to the contrary.

¶18 We note that the supreme court has articulated another test for considering equal protection challenges to the former felony murder statute. In *State v. Wanrow*, our supreme court concluded that felony murder based on assault does not violate equal protection even though the same acts could have given rise to charges of manslaughter, second degree assault, or second degree felony murder.[19] The court concluded that the statute did not give the

---

[18] LAWS OF 2003, ch. 3, §1 (emphasis added); *see also State v. Gilmer*, 96 Wn. App. 875, 890, 981 P.2d 902 (1999) ("The purpose of the felony murder rule is to punish offenders who kill during the commission of a felony."), *overruled in part on other grounds by State v. Salavea*, 151 Wn.2d 133, 86 P.3d 125 (2004).

[19] 91 Wn.2d 301, 311-12, 588 P.2d 1320 (1978). Presumably, Wanrow could also have been charged with second degree intentional murder if there was any evidence that she intended to kill the victim as opposed to merely injuring him.

prosecutor unfettered discretion because the elements of the possible crimes were different, requiring different proof for each.[20] Thus, where two crimes require proof of different elements, they do not violate the right to equal protection of the laws.[21]

¶19 Under the current version of the felony murder statute, manslaughter is not a lesser included offense of felony murder because the elements of intent for those two crimes are different.[22] Manslaughter requires an intent with respect to the death, whereas felony murder requires an intent to commit the felony that proximately caused a death.[23] For the same reason, second degree intentional murder and second degree felony murder based on assault have different elements. Like manslaughter, second degree intentional murder requires an intent with respect to the death, namely, the specific intent to cause death.[24]

¶20 As applied to Armstrong, the elements of felony murder are the intent to shoot the victim with unlawful force with a deadly weapon and causing the victim's death in the course of and in furtherance of the crime of assault. The elements of intentional murder are shooting the victim with the intent to cause the victim's death and the shot caused the victim's death. *The intent to commit the assault* (which proximately causes death) and *the intent to cause a death* are different, requiring different proof.[25] Thus, a prosecutor's discretion in charging for these crimes

*See id.* at 304 (second degree murder included felony murder based on assault and intentional but unpremeditated murder).

[20] *Id.* at 312 ("Nor does it violate petitioner's right to equal protection that the prosecutor may choose to enforce one criminal statute against her and not [the other]. The discretion vested in the prosecutor to selectively enforce criminal statutes is not unconstitutional if not based on unjustifiable standards.").

[21] *Id.*

[22] *State v. Gamble*, 154 Wn.2d 457, 467, 114 P.3d 646 (2005); *cf. State v. Tamalini*, 134 Wn.2d 725, 733, 953 P.2d 450 (1998) (felony murder and manslaughter statutes proscribe different conduct).

[23] *Gamble*, 154 Wn.2d at 467-69.

[24] RCW 9A.32.050(1)(a); *Gamble*, 154 Wn.2d at 468 n.9

[25] *See Gamble*, 154 Wn.2d at 467-69.

is constrained by the different elements to be proved and the facts in each case.[26] Because the two statutes require proof of different elements, they do not violate equal protection under this alternative test.

 ¶21 Armstrong focuses on the fact that the actus reus of the two crimes is the same—the shooting of another person. But in doing so, he ignores the crucial point that the mens rea of each is different, making the elements different.[27] To argue that a crime is identical to another while ignoring the mens rea element is untenable.[28]

¶22 Armstrong also argues that *Wanrow* is inapplicable because it was decided under a prior version of the criminal code. The wording of the statutes differs because the current statute expressly adds "assault" to the broad enumeration of felonies that may qualify as predicates for felony murder. He fails to explain why the equal protection analysis should be any different than what we have discussed because of that wording difference. Moreover, he fails to bring to our attention any other language in the current statute that is materially different from the former version so as to impact the question we decide. We conclude that the slight difference in wording of the statutes is irrelevant to our analysis.[29]

---

[26] *See Williams*, 62 Wn. App. at 754.

[27] *See Gilmer*, 96 Wn. App. at 890-91 ("The crime of felony murder is, by its very nature, a separate and distinct crime, even when its elements appear to be similar to the elements of other offenses [such as manslaughter].").

[28] *See State v. Edwards*, 17 Wn. App. 355, 361, 563 P.2d 212 (1977) ("Statutes authorizing varying punishments for the same criminal act do rest upon the rational distinction between motives and methods of commission of the crime." (citing *Tigner v. Texas*, 310 U.S. 141, 147, 60 S. Ct. 879, 84 L. Ed. 1124 (1940) ("The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."))).

[29] *See State v. Goodrich*, 72 Wn. App. 71, 78-79, 863 P.2d 599 (1993) (declining to reconsider the decision in *Wanrow* on the basis that the Sentencing Reform Act's requirement of proportional punishment compels a different result, and holding that the felony murder rule does not violate equal protection by giving prosecutors unfettered discretion even when assault is the predicate felony); *Gilmer*, 96 Wn. App. at 890-91 (citing *Wanrow* with approval).

¶23 We note that the supreme court reaffirmed *Wanrow* and the constitutionality of the felony murder statute after the legislative changes to the Sentencing Reform Act of 1981, chapter 9.94A RCW, and other parts of the criminal code.[30] The court did so in a case in which second degree assault served as the predicate felony.[31]

¶24 The essence of Armstrong's argument is that it is unfair and overly harsh to punish equally for two crimes, felony murder and intentional murder. This is an argument grounded on whether the felony murder statute makes sound policy. That question is better directed to the legislature, which has consistently rejected this policy argument in adhering to Washington's retention of the felony murder rule.

¶25 Armstrong also expresses concern that even negligent assaults can now lead to convictions for second-degree murder.[32] Again, this is a policy choice better directed to the legislature, not this court.

¶26 Armstrong further argues that he was disadvantaged in this case. He argues that the jury would have had to deadlock or acquit on both alternative means of murder before being allowed to consider a lesser included instruction of manslaughter for the charge of intentional murder. Armstrong contends that a prosecutor's ability to charge both alternative means of intentional murder and felony murder-assault in a given case proves that the decision is arbitrary. We disagree.

¶27 In this case, the prosecutor charged both alternatives of second degree murder. That the facts in this case and others arguably support more than one alternative means of committing the crime does not make the distinction in this statute arbitrary. If the State believes sufficient evidence supports charging both means, it may do so

---

[30] *State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10 (1991).

[31] *Id.*

[32] Appellant's Br. at 22 (citing *Tamalini*, 134 Wn.2d at 746 n.17 (Sanders, J., dissenting)).

without offending the constitution. And, as the supreme court held in *Wanrow*, the State's ability to charge in this way does not fall within the prohibited category of improper purposes that the court identified in that case.

¶28 Armstrong heavily relies on the supreme court's opinion in *Andress*[33] to support his equal protection arguments in this case. That reliance is misplaced.

¶29 There, the supreme court concluded that the legislature did not intend to include assault as a predicate for felony murder.[34] Accordingly, it granted the personal restraint petition and reversed the conviction of second degree felony murder in that case. *Andress* is of little or no value in resolving the constitutional question now before us.

¶30 First, as the *Andress* majority expressly noted in its opinion, it did not reach any of the constitutional challenges advanced by the petitioner in that case, deciding the matter on statutory grounds only.[35] Thus, the case simply did not address whether the former version of the felony murder statute violated equal protection.

¶31 Second, the legislature expressly rejected the *Andress* court's legislative intent analysis, subsequently amending the felony murder statute to expressly include assault as a predicate offense to felony murder.[36] The *Andress* opinion, then, represents nothing more than the supreme court's then view that assault should not qualify as a predicate felony for felony murder. Given the legislature's rejection of the supreme court's view, we see nothing in the analysis in *Andress* to assist us in the case now before us.

¶32 We affirm the judgment and sentence.

AGID and ELLINGTON, JJ., concur.

Review denied at 164 Wn.2d 1035 (2008).

---

[33] 147 Wn.2d 602.

[34] *Id.* at 616.

[35] *Id.* at 605.

[36] RCW 9A.32.050(1)(b); LAWS OF 2003, ch. 3, § 1.