FILED
COURT OF APPEALS
DIVISION II

2015 APR 28 AM 8: 37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45276-6-II |
| Respondent, | |
| v. | |
| DENISE LASHON LARKINS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Denise Larkins appeals from her jury trial conviction for felony murder in the second degree. Larkins argues that (1) the felony murder statute should not apply to an assault that causes death, (2) the felony murder statute violates constitutional guarantees of equal protection and fundamental fairness, (3) the trial court erred by declining to give a self-defense instruction, (4) the trial court improperly instructed the jury on reasonable doubt, and (5) the trial court violated Larkins's double jeopardy protections when it refused to vacate her conviction for the lesser included offense of manslaughter. We reject all of Larkins's claims and affirm the trial court. However, we remand to the trial court to correct a scrivener's error on Larkins's judgment and sentence.

## FACTS

On December 16, 2011, Larkins was a passenger in a large sport utility vehicle (SUV) driven by her friend Michelle Johnson. The two women picked up Johnson's daughter and set out toward the daughter's paternal grandmother's house. On the way, Larkins and Johnson began to argue.

When Larkins and Johnson arrived at their destination, Johnson exited the SUV and Larkins moved to the driver's seat. Larkins attempted to drive away, but Johnson held on to the

vehicle because her belongings were still in the car. Larkins stopped, exited the vehicle, and began arguing with Johnson again. Johnson struck Larkins in the head twice. Johnson retrieved her belongings from the car and began walking away.

Larkins called 911 to report that she had been hit in the head and was bleeding. While still on the phone, Larkins drove the SUV alongside Johnson and the two women continued to yell at each other. Larkins told the 911 operator that she feared Johnson and believed that Johnson had retrieved a gun from the house.[1] Larkins also told the 911 operator, and later detectives, that she had at one point seen Johnson digging in her purse. The operator told Larkins not to follow Johnson.

Larkins continued following Johnson to a nearby intersection. As soon as Johnson entered the intersection, Larkins "gunned" the engine, turned sharply, and ran over Johnson with the SUV. IV Report of Proceedings (RP) at 431. Johnson died from blunt force trauma to the head. Larkins saw Johnson lying in the road in her rear-view mirror, but believed that Johnson was attempting to use a "ploy" to "set her up to maybe come back." V RP at 571. Larkins immediately drove away.

The police contacted Larkins soon afterward. Larkins told the police that she felt unsafe because she believed Johnson's family was "[i]nvolved in gangs and weapons." IV RP at 498. Larkins said she was afraid of the "assaultive and argumentative behavior" Johnson had exhibited throughout their friendship. V RP at 594. Larkins also said she had post-traumatic stress disorder (PTSD) and suffered from anxiety and panic attacks. Larkins denied running over Johnson. Larkins said that she drove away because she feared Johnson's "gangster ass kid with guns." V

---

[1] The record does not indicate whether a gun was found on Johnson's person.

RP at 597. Larkins appeared surprised when the police informed her that Johnson died from the impact.

PROCEDURAL HISTORY

The State charged Larkins in two separate counts with intentional murder in the second degree[2] (count I), and felony murder in the second degree predicated on an assault in the first, second, or third degree[3] (count II).

Larkins's jury trial commenced and she presented a defense of diminished capacity, offering evidence that she suffered from complex PTSD, depression, anxiety disorders, and substance abuse disorders. As a result of her PTSD, Larkins was "always on edge," prone to react impulsively and emotionally, and had an impaired ability to appraise danger. VI RP at 712. Larkins also "experienced psychotic symptoms from time to time." VI RP at 704. Larkins had a low intelligence quotient (IQ), which could plausibly lead her to believe that hitting a person with a car would not hurt him or her very much. An expert testified that Larkins was "in a total panic with disorganized fragmented thinking" at the time she killed Johnson, which impaired her ability to form a criminal intent. VI RP at 765.

At the close of trial, Larkins offered a self-defense instruction. But the trial court refused to give the instruction because no reasonable person would have acted as Larkins did.

The jury returned a guilty verdict on count II, as well as the lesser included offense of manslaughter in the second degree under count I. At sentencing, Larkins asked the trial court to vacate the manslaughter conviction. The trial court stated that it "would be unjust" to vacate the manslaughter conviction outright. VII RP at 976. Instead the trial court merged the manslaughter

---

[2] RCW 9A.32.050(1)(a).

[3] RCW 9A.32.050(1)(b).

conviction with the felony murder conviction, entering judgment only on the felony murder conviction. Because Larkins's judgment and sentence was preprinted with both convictions, the trial court struck out references to the manslaughter conviction. The trial court imposed a standard range sentence of 220 months on the felony murder charge. Larkins appeals.

ANALYSIS

I.   FELONY MURDER STATUTE

Larkins argues that under the rule of lenity, the felony murder statute should not be interpreted to apply to an assault that causes the victim's death. We recently addressed and rejected an identical argument in *State v. McDaniel*, No. 44972-2, 2015 WL 686800, at *2-3 (Wash. Ct. App. Feb. 18, 2015). In *McDaniel*, we held that the felony murder statute was not ambiguous, the plain language of the statute clearly includes assault causing death as a predicate offense, and that the rule of lenity does not apply. 2015 WL 686800, at *2-3. Division One of this court also rejected an argument identical to Larkins's in *State v. Gordon*, 153 Wn. App. 516, 527-29, 223 P.3d 519 (2009), *rev'd on other grounds*, 172 Wn.2d 671, 260 P.3d 884 (2011). Following our precedent in *McDaniel* and *Gordon*, we reject Larkins's argument.

II.   EQUAL PROTECTION AND FUNDAMENTAL FAIRNESS

Larkins argues that her prosecution for felony murder predicated on assault violated the equal protection clause of the state and federal constitutions, as well as the due process guaranty of fundamental fairness, because the prosecutor had unfettered discretion to charge her with two crimes for the same conduct. We disagree.

To the extent Larkins argues that the murder statute violates equal protection because it allows the prosecutor to arbitrarily charge felony murder rather than intentional murder when a person assaults another that results in death, we rejected that exact argument in *State v. Armstrong*,

143 Wn. App. 333, 339-44, 178 P.3d 1048 (2008). The State charged Larkins with both intentional murder in the second degree and felony murder in the second degree. In *Armstrong*, the defendant was charged with intentional murder in the second degree and felony murder in the second degree predicated on felony of second degree assault. 143 Wn. App. at 336. The *Armstrong* court held that because the "intent to commit the assault (which proximately causes death) and the intent to cause a death are different, requiring different proof," the two statutes criminalizing conduct as intentional murder in the second degree and felony murder in the second degree do not violate equal protection. 143 Wn. App. at 341-42 (boldface omitted) (emphasis omitted). In accordance with *Armstrong*, 143 Wn. App. at 339-44, we hold that the prosecutor's choice to charge a defendant with intentional murder in the second degree, felony murder in the second degree, or both, does not violate equal protection.

To the extent Larkins argues that where a person commits an assault which results in death, the prosecution's unfettered discretion to choose between a charge of felony murder in the second degree or *manslaughter* violates equal protection. We disagree.

A.    Equal Protection

Both the state and federal constitutions mandate that similarly situated persons receive like treatment under the law. WASH. CONST. art. I, § 12;[4] U.S. CONST., amend. XIV.[5] Our Supreme Court has consistently construed the federal equal protection and state privileges and immunities

---

[4] "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

[5] "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

clauses identically and considered claims arising under them to be one issue. *State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991).

The right to equal protection of the laws may be violated when two statutes criminalize the same acts, but penalize them differently. *State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990). However, "there is no equal protection violation when a statutory scheme proscribes crimes that 'require proof of different elements.'" *Armstrong*, 143 Wn. App. at 338 (quoting *Leech*, 114 Wn.2d at 711). "When the crimes have different elements, the prosecutor's discretion is not arbitrary, but is constrained by which elements can be proved under the circumstances." *Armstrong*, 143 Wn. App. at 338. Accordingly, we consider whether "the crimes that the prosecuting attorney has the discretion to charge require proof of different elements." *Leech*, 114 Wn.2d at 711.

The elements of felony murder predicated on assault are different from the elements of manslaughter. RCW 9A.32.050(1)(b); RCW 9A.32.060(1)(a); RCW 9A.32.070(1). The felony murder in the second degree statute provides:

> A person is guilty of murder in the second degree when: . . . He or she commits or attempts to commit any felony, including assault, other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.

RCW 9A.32.050(1)(b). As an element of the crime, the State must prove the defendant committed the predicate felony. Here, the State alleged assault in the first, second, or third degree as the predicate felonies. The elements of assault in the first degree, as charged here include: "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: . . . Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a). The elements of assault in the second degree,

as charged here include: "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . Assaults another with a deadly weapon." RCW 9A.36.021(1)(c). And, the elements of assault in the third degree, as charged here include: "A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree: . . . With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d).

A person is guilty of manslaughter in the first degree when that person "recklessly causes the death of another person." RCW 9A.32.060(1)(a). And, a person is guilty of manslaughter in the second degree when "with criminal negligence" that person causes the death of another person. RCW 9A.32.070(1).

The mental state required to prove felony murder predicated on assault is different from the mental state required to prove manslaughter. We do not compare mental state elements in isolation; rather we examine mental states as they necessarily relate to the defendant's acts. *State v. Gamble*, 154 Wn.2d 457, 467, 114 P.3d 646 (2005). None of the requisite mental state elements of the predicate assaults charged here requires the State to prove Larkins caused the death of another person with a reckless or criminally negligent state of mind as is required for manslaughter convictions. *See* RCW 9A.32.060(1)(a) (manslaughter in the first degree); RCW 9A.32.070(1) (manslaughter in the second degree).

Our criminal code defines the "recklessness" and "criminal negligence" mental states as follows:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a *wrongful act* may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

7

. . . .

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a *wrongful act* may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

RCW 9A.08.010(1)(c), (d) (emphasis added). In the context of manslaughter, the "wrongful act" caused by a defendant's actions is homicide. *State v. Henderson*, No. 90154-6, 2015 WL 847427, at *5 (Wash. Feb. 26, 2015); *Gamble*, 154 Wn.2d at 467. To obtain a manslaughter conviction, the State must prove that the defendant (1) knew of and disregarded a substantial risk that a *death* may occur or (2) failed to be aware of a substantial risk that a *death* may occur. RCW 9A.32.060(1)(a); RCW 9A.32.070(1). On the contrary, to obtain a felony murder conviction, predicated on assault, as charged here, the State was required to prove that the defendant (1) acted with intent, i.e., the objective or purpose,[6] to inflict great bodily harm, RCW 9A.36.011(1)(a) (assault in the first degree), (2) assaulted another with a deadly weapon, RCW 9A.36.021(1)(c) (assault in the second degree), or (3) failed to be aware of a substantial risk that bodily harm may occur, RCW 9A.32.031(1)(d) (assault in the third degree).

Significantly, the assault statutes do not contemplate a risk of death as required by the manslaughter statutes. In fact, a felony murder in the second degree charge does not require the State to prove any mental state element as to the resulting death itself, whereas manslaughter does require proof of a mental state element vis-à-vis the resulting death. *See Gamble*, 154 Wn.2d at 468-69; RCW 9A.32.060(1)(a) (recklessness); RCW 9A.32.070(1) (criminal negligence). Because these crimes do not have the same elements, the authority of the prosecuting attorney to

---

[6] "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

charge Larkins with felony murder in the second degree predicated on assault as charged here rather than manslaughter does not violate equal protection. *See Leech*, 114 Wn.2d at 712; *Armstrong*, 143 Wn. App. at 342.

B.     Fundamental Fairness

Larkins also argues that a prosecutor's decision to charge either manslaughter or felony murder for an assault resulting in death violated the guaranty of fundamental fairness inherent in the due process clause of the Fourteenth Amendment article 1, section 3 of the Washington Constitution because the effect is to impose different punishments for the same criminal conduct. But as discussed above, the two crimes require different states of mind, and thus different proof. Contrary to Larkins's assertions, it is not only the prosecutor's discretion that determines whether a defendant will be punished for manslaughter or for felony murder, but the strength of the prosecution's proof and the jury's judgment. Regardless of which offense the prosecutor charges, he or she must still prove the elements of the crime beyond a reasonable doubt to a fact finder. The felony murder statute does not result in arbitrary punishment, and Larkins fails to show that the felony murder statute violates due process.

III.     SELF-DEFENSE

Larkins argues that the trial court violated her right to present a defense when it refused to instruct the jury on self-defense. Because no evidence supported her theory of self-defense, we disagree.

A defendant is entitled to have the jury instructed on self-defense if there is some evidence to support the theory. *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). Self-defense has three elements: (1) the defendant subjectively feared that she was in imminent danger of great bodily harm, (2) the defendant's belief was objectively reasonable, and (3) the defendant exercised

9

no more force than reasonably necessary. *State v. Werner*, 170 Wn.2d 333, 337-38, 241 P.3d 410 (2010). Self-defense involves both subjective and objective elements. *State v. Read*, 147 Wn.2d 238, 242-43, 53 P.3d 26 (2002). The subjective element considers the defendant's acts "in light of all the facts and circumstances the defendant knew when the act occurred." *Read*, 147 Wn.2d at 243. The objective elements consider "what a reasonable person would have done if placed in the defendant's situation." *Read*, 147 Wn.2d at 243.

The standard of review depends on the reason the trial court refused to grant the self-defense instruction. *State v. Walker*, 136 Wn.2d 767, 771, 966 P.2d 883 (1998). If the trial court declines the self-defense instruction based on a factual dispute, we review its decision for abuse of discretion. *Walker*, 136 Wn.2d at 771-72. But if the trial court declines the self-defense instruction based on a ruling of law, we review its decision de novo. *Walker*, 136 Wn.2d at 772. Here, the trial court refused to give a self-defense instruction because it found no reasonable person in Larkins's shoes would have acted as she did. This ruling involves an issue of law we review de novo. *Read*, 147 Wn.2d at 243.

A defendant may only use as much force in self-defense as "what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." *Walden*, 131 Wn.2d at 474. Deadly force may be used only if the defendant reasonably believes that he or she is threatened with death or great personal injury. *Walden*, 131 Wn.2d at 474.

If placed in the situation Larkins faced, no reasonably prudent person would have believed himself or herself to be in imminent danger of death or great personal injury. Nor would any reasonably prudent person have believed it necessary to strike Johnson with the automobile to defend against the perceived danger in these circumstances. Although Larkins believed that Johnson possessed a gun and had been digging in her purse while walking, Johnson was not

brandishing a gun or threatening Larkins with a gun. In fact, Larkins never saw Johnson with a gun. Rather, Johnson was walking away from Larkins at the time Larkins ran over her. Larkins also believed that Johnson's family would hurt her. But Johnson's family members were not present at the scene. Any threat that Johnson's family posed to Larkins was not imminent and could not have justified Larkins killing Johnson. *See Read*, 147 Wn.2d at 242-43.

The objective test for self-defense is not met here. Therefore, we hold that the trial court did not err by denying Larkins a self-defense instruction.

## IV. REASONABLE DOUBT INSTRUCTION

Larkins argues that the trial court's reasonable doubt instruction undercut the State's burden of proof by erroneously inviting the jury to search for the truth. We disagree.

"Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). "It is reversible error to instruct the jury in a manner that would relieve the State of this burden." *Pirtle*, 127 Wn.2d at 656. "We review a challenged jury instruction de novo, evaluating it in the context of the instructions as a whole." *Pirtle*, 127 Wn.2d at 656.

The instruction that Larkins complains of has never been held to be improper. To the contrary, our Supreme Court has directed the use of WPIC 4.01 to instruct juries of the nature of the government's burden. *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). The trial court did exactly that, reproducing WPIC 4.01 verbatim:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

11

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 144; *see also* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3rd ed. 2008).

Larkins argues that WPIC 4.01 improperly suggests that the jury's role is to search for the truth. But WPIC 4.01 does not tell the jury to find the truth—it tells the jury to acquit the defendant *unless* the government convinces the jury of the truth of the charge. WPIC 4.01 does not misstate the State's burden, and therefore, we hold that the trial court did not err by giving the WPIC 4.01 instruction.

## V.     DOUBLE JEOPARDY

Larkins argues that the trial court violated her double jeopardy protections when it merged her manslaughter conviction with her felony murder conviction, rather than vacating the lesser offense. We disagree.

A violation of double jeopardy is a question of law we review de novo. *State v. Fuller*, 169 Wn. App. 797, 832, 282 P.3d 126 (2012). The double jeopardy clauses of the Fifth Amendment to the United States Constitution and the Washington Constitution, article 1, section 9, protect defendants against multiple punishments for the same offense. *State v. Calle*, 125 Wn.2d 769, 772, 888 P.2d 155 (1995). A conviction alone may constitute punishment, even if it does not carry a sentence. *State v. Turner*, 169 Wn.2d 448, 454-55, 238 P.3d 461 (2010). Therefore, a trial

12

court may not enter multiple convictions for a single offense, even if it imposes only one sentence. *Fuller*, 169 Wn. App. at 832.

Double jeopardy does not prohibit the State from prosecuting a defendant for alternative means of committing the same crime. *Fuller*, 169 Wn. App. at 832-33. But when the jury finds a defendant guilty on the basis of more than one alternative means, the trial court may only sentence the defendant for *one* conviction. *Fuller*, 169 Wn. App. at 833. Furthermore, the trial court may not *conditionally* dismiss a guilty verdict on a lesser charge, such that the State could reinstate the lesser conviction if the greater conviction were later overturned. *Fuller*, 169 Wn. App. at 833. Also, the trial court cannot refer to the validity of the lesser charge in the judgment and sentence, in any order attached thereto, or at sentencing. *Turner*, 169 Wn.2d at 464-65.

Here, the jury returned guilty verdicts on both manslaughter and felony murder. The trial court entered a judgment on the felony murder charge only (count II), striking out references to the manslaughter conviction (count I) from the "current offense(s)" and "sentencing data" sections of the preprinted judgment and sentence. CP at 228-29. However, the "confinement" section of the judgment and sentence still contains a notation that count I merges with count II. CP at 232.

Larkins argues that the trial court openly recognized the validity of the manslaughter conviction by leaving this notation in the judgment and sentence and stating that it would not "vacate . . . the manslaughter conviction outright, because . . . [t]he jury came back with that verdict." VII RP at 976. But the trial court's notation and statement did not work to hold the manslaughter conviction in abeyance, to be reinstated if the felony murder conviction failed. *See State v. Womac*, 160 Wn.2d 643, 659, 160 P.3d 40 (2007). The trial court did not make "any reference to the possible reinstatement of a vacated lesser conviction" or opine that the manslaughter conviction was *valid*. *Turner*, 169 Wn.2d at 466, 464.

13

The trial court's passing reference to the manslaughter verdict and the errant notation on the judgment and sentence did not operate to punish Larkins twice. As a result, we hold that no double jeopardy violation occurred. However, the notation on the confinement section of Larkins's judgment and sentence is a scrivener's error that must be corrected. The trial court did not enter judgment on the manslaughter conviction. The trial court struck count I from the "current offense(s)" and "sentencing data" sections of the preprinted judgment and sentence. CP at 228-29. Quite literally, Larkins's judgment and sentence does not include a "count I." Therefore, the notation in the confinement section that count I merged with count II is an errant reference to a count that does not exist. Accordingly, we remand to the trial court to correct this scrivener's error by striking the remaining reference to count I on Larkins's judgment and sentence. We affirm in all other respects.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, P.J.

_____
Lee, J.