223 P.3d 519 (2009)
STATE of Washington, Respondent,
v.
John Caldwell GORDON, Appellant.
State of Washington, Respondent,
v.
Charles Andrew Bukovsky, Appellant.
No. 63815-7-I.
Court of Appeals of Washington, Division 1.
December 14, 2009.
*522 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant, John Caldwell Gordon.
Sheri Lynn Arnold, Attorney at Law, Tacoma, WA, for Appellant, Charles Andrew Bukovsky.
*523 Kathleen Proctor, Pierce County Prosecuting Attorney Office, Tacoma, WA, for Respondent.
APPELWICK, J.
¶ 1 Gordon and Bukovsky appeal their convictions for second degree felony murder. The second degree felony murder statute does not violate equal protection, nor is it ambiguous. Gordon contends the jury was deprived of constitutionally sufficient instructions on the aggravating factors of deliberate cruelty and victim vulnerability. After Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), for the purpose of instructing the jury on an exceptional sentence, aggravating factors are elements of the crime. Failure to instruct on the specific legal standard defining an aggravating factor is a manifest error affecting a constitutional right. Here, the error was not harmless as to either the deliberate cruelty or the particularly vulnerable victim factors. We reverse the exceptional sentences and remand for further proceedings.

FACTS
¶ 2 Officers Brian Wurts and David Butts of the Lakewood Police Department responded to a call from the Lakewood Garden Apartments on September 5, 2006, at approximately 3:15 a.m. They observed a man, Brian Lewis, severely injured and bloody on the ground, between two vans. Lewis did not appear to be entirely conscious and was rolling from side to side. A large amount of blood was pooling beneath his body.
¶ 3 The paramedic who responded to the scene testified that Lewis's eyes were completely swollen shut and his upper lip was split to the bottom of his nose, exposing his upper mandible. Lewis was having problems breathing. In transit to the hospital, Lewis's heart rate declined. Lewis went into cardiac arrest about six minutes before the ambulance arrived at the hospital.
¶ 4 The forensic officer dispatched to the crime scene documented the scene and took measurements for a diagram. There were two vans parked side by side in the parking lot, with about four feet between them. There was blood in the area between the vans, including spatter on the wheels.
¶ 5 Four men were involved in the assault on Lewis: Charles Bukovsky, John Gordon, Jesie Puapuaga, and Anthony Knoefler. The altercation began when Gordon punched Shecola Thomas in the eye. Lewis confronted Gordon about hitting Thomas. According to Thomas, the verbal confrontation escalated into physical violence when Gordon hit Lewis in the face. At that point, according to Knoefler, Lewis tried to run out from between the two vans. Lewis hit Knoefler, then Gordon punched Lewis several times, causing Lewis to fall to the ground. Knoefler kicked Lewis in the head as he tried to get up, causing him to fall to the ground again. Gordon and Bukovsky then began punching and kicking Lewis. They landed repeated blows on his chest and stomach. About thirty seconds after Lewis had fallen to the ground, Puapuaga arrived and put Lewis in a chokehold while he was still on the ground. Gordon and Bukovsky repeatedly kicked Lewis while he was in the chokehold.[1] Lewis's head was near the front tires of the two vans, between which the assault took place. Knoefler saw a car coming and thought it might be the police, prompting him to yell out. The beating stopped.
¶ 6 The forensic pathologist who performed the postmortem examination stated that the cause of Lewis's death was multiple traumatic injuries to the body and head. The blunt force trauma to his head caused subgaleal and subarachnoid hemorrhages to the brain. The autopsy also revealed that Lewis had been asphyxiated, which was a significant factor in his death. An expert in blood stain pattern analysis determined that nothing in the blood spatter indicated the source of the blood was from someone who was standing up.
*524 ¶ 7 On September 7, 2006, the Pierce County Prosecutor's Office filed an information charging Gordon with one count of murder in the second degree for the assault of Brian Lewis, which caused Lewis's death. The information indicated that other codefendants, Bukovsky, Puapuaga and Knoefler, were also involved in the crime.[2] On the same day, Bukovsky was charged with one count of murder in the second degree for the same events.
¶ 8 Both Gordon and Bukovsky sought to dismiss the charges, arguing that the felony murder statute, RCW 9A.32.050(1)(b), violated equal protection when the predicate felony was assault. The court denied the motion.
¶ 9 The State filed an amended information in both cases on July 10, 2007, to allege two aggravating circumstances: victim vulnerability and deliberate cruelty. Counsel for both Bukovsky and Gordon objected to the court's decision to give the jury the special verdict question regarding victim vulnerability, on the grounds that it was inapplicable to the facts of the case, but counsel did not object to the special verdict question regarding deliberate cruelty. Nor did counsel propose jury instructions articulating the specific legal meaning of either aggravating factor, or object to the State's jury instructions on either aggravating factor.
¶ 10 The jury returned guilty verdicts for both defendants. The jury also returned special verdicts, finding that both the victim vulnerability and deliberate cruelty aggravating circumstances were applicable.
¶ 11 Because of the existence of the aggravating circumstances found by the jury, the State sought imposition of exceptional sentences. Based on an offender score of two, the court sentenced Bukovsky to 244 months on the second degree murder and 144 months for the aggravating factors, for a total of 388 months. Based on an offender score of zero, the court sentenced Gordon to 220 months on the second degree murder and 144 months for the aggravating factors, for a total of 364 months.
¶ 12 The court entered findings of fact and conclusions of law regarding the exceptional sentences. Some of the findings and conclusion contain statements that were not explicitly found by the jury.
¶ 13 Both defendants timely appealed their judgments.

DISCUSSION

I. Equal Protection

¶ 14 Both Gordon and Bukovsky challenge their convictions on the ground that the second degree felony murder statute, RCW 9A.32.050(1)(b), violates equal protection. The second degree felony murder statute states that a person is guilty of murder in the second degree when:
He or she commits or attempts to commit any felony, including assault, ... and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.
RCW 9A.32.050(1)(b).
¶ 15 Article I, section 12 of the Washington Constitution and the Fourteenth Amendment to the United States Constitution guarantee that similarly situated persons must receive like treatment under the law. State v. Manussier, 129 Wash.2d 652, 672, 921 P.2d 473 (1996). Our supreme court has consistently construed the federal and state equal protection clauses identically and considers claims arising under them to be one issue. Id.
¶ 16 In analyzing equal protection claims, rational basis review applies when a statutory classification does not involve a suspect or semisuspect class and does not threaten a fundamental right. Id. at 673, 921 P.2d 473. When a statutory classification only affects a physical liberty interest, we apply the deferential rational relationship test. State v. Coria, 120 Wash.2d 156, 171, 839 P.2d 890 (1992) (rejecting intermediate *525 scrutiny when physical liberty interest is involved, but no semisuspect class is affected). Under rational basis review, the challenged law must reflect a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective. Manussier, 129 Wash.2d at 673, 921 P.2d 473. Rational basis requires only that the means employed by the statute be rationally related to a legitimate state goal, not that the means of the challenged statute be the best way of achieving that goal. Id.
¶ 17 A statute is presumed to be constitutional, and the party challenging it bears the burden to prove that it is unconstitutional beyond a reasonable doubt. State v. Hughes, 154 Wash.2d 118, 132, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). We review the constitutionality of a statute de novo. Id.
¶ 18 Both Gordon and Bukovsky argue that RCW 9A.32.050(1)(b) is unconstitutional as applied,[3] because it impermissibly creates two groups of second degree murder defendants. Specifically, they argue that those defendants charged with second degree felony murder, who by definition do not intend to kill (RCW 9A.32.050(1)(b)), are treated more harshly than those defendants charged with second degree murder, who by definition intend to kill (RCW 9A.32.050(1)(a)). A defendant charged with second degree felony murder does not have the right to the lesser included offense instructions of manslaughter, whereas a defendant charged with second degree murder does have the right to the lesser included offense instruction of manslaughter. State v. Gamble, 154 Wash.2d 457, 466-69, 114 P.3d 646 (2005). Both appellants also highlight the amount of discretion this statutory scheme vests in the prosecutor.
¶ 19 The equal protection argument is controlled by State v. Armstrong, 143 Wash.App. 333, 178 P.3d 1048 (2008), review denied 164 Wash.2d 1035, 197 P.3d 1185 (2008), which presented a similar challenge to the second degree felony murder statute, as well as analogous factual circumstances. In Armstrong, the defendant challenged his conviction for second degree felony murder. Id. at 335, 178 P.3d 1048. The State based the charge on the predicate crime of second degree assault, where Armstrong shot the victim, and the victim died shortly after from the gunshot wounds. Id. at 335-36, 178 P.3d 1048.
¶ 20 The class of persons charged with felony murder, where the predicate felony is assault, is similarly situated to the class of persons charged with intentional murder. Both classes have committed some type of assault that results in death. See id. at 339, 178 P.3d 1048. Because the statutory classification of those who commit felony murder affects a physical liberty interest, rational basis review applies. See id.; see also State v. Coria, 120 Wash.2d at 171, 839 P.2d 890.
¶ 21 In re Personal Restraint of Andress, 147 Wash.2d 602, 616, 56 P.3d 981 (2002) held that the legislature did not intend that assault be a predicate felony in the felony murder scheme. In response, the legislature provided a statement of intent when it amended the second degree felony murder statute in 2003 to specifically include assault. See RCW 9A.32.050(1)(b) (stating that any felony, "including assault," can serve as the predicate felony). The legislature explained its purpose was to, "[p]unish, under the applicable murder statutes, those who commit a homicide in the course and in furtherance of a felony." Laws of 2003, ch. 3, § 1.
*526 ¶ 22 The statute achieves the legislature's express goal of punishing those who commit a homicide in the course of and in furtherance of a felony in the same manner as those who intend to kill. Armstrong, 143 Wash. App. at 340, 178 P.3d 1048. Including assault as a predicate felony is rationally related to achieving that objective. Manussier, 129 Wash.2d at 673, 921 P.2d 473. While this is certainly a harsh policy, and does vest immense discretionary power in the prosecutor, it is nevertheless a policy choice well within the province of the legislature. See Armstrong, 143 Wash.App. at 340, 178 P.3d 1048.
¶ 23 Further, the equal protection challenge based on the unavailability of the lesser included offense instruction of manslaughter for those charged with felony murder is a matter courts have already settled. The court held in Gamble that because manslaughter requires proof of a mens rea element vis-à-vis the resulting death, whereas felony murder does not when second degree assault is the predicate felony, manslaughter cannot be a lesser included offense of second degree felony murder. 154 Wash.2d at 466-69, 114 P.3d 646; see also Armstrong, 143 Wash.App. at 341, 178 P.3d 1048.
¶ 24 A rational basis exists for the distinctions the legislature made in the statute, so it does not violate equal protection.

II. Ambiguity

¶ 25 Gordon suggests that, under canons the of statutory construction and the rule of lenity, this court should interpret the second degree felony murder statute to allow assault to serve as the predicate felony only where the assault is not also the act that causes the death.
¶ 26 We construe a statute by first looking at its plain language. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Statutes should be construed to effect their purpose, and strained, unlikely, or absurd consequences resulting from a literal reading are to be avoided. State v. Leech, 114 Wash.2d 700, 708-09, 790 P.2d 160 (1990). We will not construe a statute to reach an absurd result, because we do not presume that the legislature intended absurd results. State v. Vela, 100 Wash.2d 636, 641, 673 P.2d 185 (1983); Leech, 114 Wash.2d at 708-09, 790 P.2d 160.
¶ 27 Only if a statute is ambiguous may we resort to aids of construction, such as legislative history. State v. Fisher, 139 Wash.App. 578, 583, 161 P.3d 1054 (2007). The court's purpose in construing a statute is to ascertain and give effect to the intent and purpose of the legislature. State v. Van Woerden, 93 Wash.App. 110, 116, 967 P.2d 14 (1998). If a statute is ambiguous, we apply the rule of lenity in favor of the accused. State v. Lively, 130 Wash.2d 1, 14, 921 P.2d 1035 (1996); State v. Stratton, 130 Wash.App. 760, 764-65, 124 P.3d 660 (2005).
¶ 28 Gordon urges the court to consider whether the 2003 amendment resolves the central problem the court in Andress noted. There, the court expressed concern that "[t]he `in furtherance of' language is a strong indication that the legislature does not intend that assault should serve as a predicate felony for second degree felony murder." Andress, 147 Wash.2d at 611, 56 P.3d 981. The court in Andress focused its analysis on the problem of the res gestae[4] dilemma created by circumstances where an assault is both the predicate felony and the act that causes the death:
It is nonsensical to speak of a criminal actan assaultthat results in death as being part of the res gestae of that same criminal act since the conduct constituting the assault and the homicide are the same. Consequently, in the case of assault there will never be a res gestae issue because the assault will always be directly linked to the homicide. Therefore, if assault were encompassed within the unenumerated felonies in [former] RCW 9A.32.050(1)(b), the `in furtherance of' language would be meaningless as to that predicate felony. In short, unlike the cases where arson is *527 the predicate felony, the assault is not independent of the homicide.
Id. at 610, 56 P.3d 981.
¶ 29 We conclude the statute is not ambiguous. But, even if we assume the statute was ambiguous and look at the legislative history of the statute as Gordon urges, we see that the res gestae issue is no longer problematic. The reasoning in Andress concerning res gestae involved statutory construction principles to derive the legislature's intent. The 2003 amendment in response to the holding in Andress and its accompanying statement of intent make it clear the legislature wants assault to be a predicate felony. As a result, we would reach the same conclusion.

III. Jury Instructions on Aggravating Factors

¶ 30 The State requested that the jury consider two aggravating factors in support of exceptional sentences for both defendants deliberate cruelty to the victim, and particular vulnerability of the victim. Gordon argues the jury instructions on the aggravating factors were constitutionally deficient. Although they articulated the State's burden to prove the factors beyond a reasonable doubt,[5] they lacked any articulation of the specific elements of each factor. A challenged jury instruction is reviewed de novo, in the context of the instructions as a whole. State v. Brett, 126 Wash.2d 136, 171, 892 P.2d 29 (1995).
¶ 31 Both factors at issue here are listed in RCW 9.94A.535(3), which provides a list of aggravating circumstances to be considered by a jury that will support a sentence above the standard range. The list includes whether "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim" or whether "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." RCW 9.94A.535(3)(a), (b). The statute provides no other definition of either factor.
¶ 32 Our Supreme Court has given specific definitions to both of these aggravating factors that are not concomitant with either a statutory definition or a commonsense meaning of the terms. "Deliberate cruelty" is "gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself .... the cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense." State v. Tili, 148 Wash.2d 350, 369, 60 P.3d 1192 (2003) (citation omitted). "Particular vulnerability" of the victim means both that the defendant knew of the victim's particular vulnerability, and that this vulnerability was a substantial factor in the commission of the crime. State v. Suleiman, 158 Wash.2d 280, 291-92, 143 P.3d 795 (2006).
¶ 33 The special verdict form for deliberate cruelty read: "Having found defendant ... guilty of Murder In The Second Degree, did [defendant]'s conduct during the commission of the offense, manifest deliberate cruelty to Brian Lewis?" The accompanying jury instruction to the special verdict stated that "[f]or purposes of special verdict Question One [deliberate cruelty] the State must prove beyond a reasonable doubt that the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim."
¶ 34 The special verdict form for particular vulnerability of the victim read, "Having found defendant ... guilty of Murder In The Second Degree, did [defendant] know or should he have known that the victim of the offense was particularly vulnerable or incapable of resistance?" The accompanying jury instruction to the special verdict stated that "[f]or purposes of special verdict Question Two [victim vulnerability] the State must prove beyond a reasonable doubt that the *528 defendant knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance."
¶ 35 Neither Gordon nor Bukovsky objected to the court's instructions.[6] Nor did they propose additional instructions defining either aggravating factor. Because this issue is raised for the first time on appeal, we must first determine whether the claimed error is of constitutional magnitude. RAP 2.5(a)(3); State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995).

A. Manifest Error Affecting a Constitutional Right

¶ 36 Due process requires a criminal defendant be convicted only when every element of the charged crime is proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To satisfy the constitutional requirement of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law and permit the defendant to present his theory of the case. State v. Mills, 154 Wash.2d 1, 7, 109 P.3d 415 (2005). The "constitution only requires the jury be instructed as to each element of the offense charged, and the failure of the trial court to further define one of those elements is not within the ambit of the constitutional rule." State v. Fowler, 114 Wash.2d 59, 69-70, 785 P.2d 808 (1990) (citing State v. Scott, 110 Wash.2d 682, 689, 757 P.2d 492 (1988)).
¶ 37 Accordingly, failure to define every element of a charged offense is an error of constitutional magnitude. State v. Johnson, 100 Wash.2d 607, 623, 674 P.2d 145 (1983), overruled on other grounds by State v. Bergeron, 105 Wash.2d 1, 4, 711 P.2d 1000 (1985). If the jury instructions either incorrectly define or are silent on an element of a crime, the State is impermissibly relieved of its burden to prove beyond a reasonable doubt that the defendant committed all the essential elements. State v. Williams, 136 Wash.App. 486, 492-93, 150 P.3d 111 (2007). The relevant inquiry, then, in determining "whether the instructional error was one of constitutional magnitude is whether the instruction omitted an element so as to relieve the State of its burden or merely failed to further define one of those elements." State v. O'Hara, 167 Wash.2d 91, ¶ 25, 217 P.3d 756 (2009).
¶ 38 The State alleges the missing instructions were merely definitional, so constitutional error was not present. The State is correct that failure to give a definitional instruction is not constitutional error. See Scott, 110 Wash.2d at 690-91, 757 P.2d 492. For instance, in Scott, one of the defendants argued the trial court's failure to submit a definition of "knowledge" to the jury was constitutional error. Id. at 684, 757 P.2d 492. Because the court could not find any authority requiring an instruction to specifically define the words therein, the court held that Brown could not raise the issue of the court's failure to define "knowledge" for the first time on appeal. Id. at 691, 757 P.2d 492.
¶ 39 Tili's articulation of "deliberate cruelty" suggests that it is a technical legal term that must be defined if requested. 148 Wash.2d at 369, 60 P.3d 1192; State v. Allen, 101 Wash.2d 355, 358, 678 P.2d 798 (1984) ("trial courts must define technical words and expressions used in jury instructions, but need not define words and expressions that are of common understanding.") Similarly, Suleiman's articulation of "particular vulnerability" of the victim suggests that it, too, is a technical legal term that must be defined if requested. 158 Wash.2d at 291-92, 143 P.3d 795; Allen, 101 Wash.2d at 358, 678 P.2d 798. However, failure to define a technical word or expression does not rise to the level of a constitutional error. Fowler, 114 Wash.2d at 69-70, 785 P.2d 808.
*529 ¶ 40 However, Gordon contends that, after Apprendi,[7] aggravating factors used to impose a sentence above the standard range are elements of the aggravated version of the crime. 530 U.S. at 494 n. 19, 120 S.Ct. 2348. In Apprendi, the Court considered the constitutionality of New Jersey's hate crime enhancement statute.[8]Id. at 491-94, 120 S.Ct. 2348. In so doing, it provided a detailed distinction between sentencing factors and sentence enhancements:
[T]he term "sentencing factor" ... describes a circumstance ... that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.
Id. at 494 n. 19, 120 S.Ct. 2348. Echoing Apprendi's reasoning, the Court in Ring characterized Arizona's enumerated aggravating factors as the "`functional equivalent of an element of a greater offense.'" 536 U.S at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348).
¶ 41 After Apprendi and Ring, the alleged error here can be fairly characterized as failing to properly instruct on an element of the aggravated crime.[9] We hold that aggravating factors are elements of the crime for purposes of instructing the jury on exceptional sentencing.[10] We further hold *530 that where an appellate court has further defined the legal standard of a statutory aggravating factor yet the jury instruction fails to include the legal standard, an error of constitutional magnitude is present.
¶ 42 A failure to adequately instruct the jury on the elements of an aggravating factor for an exceptional sentence is manifest error affecting a constitutional right that may be argued for the first time on appeal. RAP 2.5(a); State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996) (a trial court's failure to correctly, accurately, and completely convey the necessary legal standard in its jury instructions is an error of constitutional magnitude that is presumed prejudicial), abrogated on other grounds by State v. O'Hara, 167 Wash.2d 91, 217 P.3d 756 (2009); Williams, 136 Wash.App. at 492-93, 150 P.3d 111.
¶ 43 While the error is of constitutional magnitude, it must also be manifest. O'Hara, 217 P.3d at 761. "`Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." O'Hara, 217 P.3d at 761; State v. Kirkman, 159 Wash.2d 918, 935, 155 P.3d 125 (2007). To demonstrate actual prejudice, there must be a "`plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" O'Hara, 217 P.3d at 761 (alteration in original) (internal quotation marks omitted) (quoting Kirkman, 159 Wash.2d at 935, 155 P.3d 125). To ensure that the actual prejudice inquiry and the harmless error analysis are distinct, "the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." Id. at 761.
¶ 44 The error is patently obvious on the record. Gordon has made the required showing of actual prejudice by highlighting the difference between the instructions as given and the proper language that should have been included in the instructions. The practical and identifiable consequences in the trial were, as Gordon explains, that the jury was left to deliberate with a misleading and incomplete statement of the law. He need not show more.

B. Harmless Error

¶ 45 Because the lack of instruction is a manifest error affecting a constitutional right, we examine the effect the error had on defendant's trial according to harmless error standard. RAP 2.5(a)(3); State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988). A constitutional error is harmless only if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. State v. Brown, 147 Wash.2d 330, 341, 58 P.3d 889 (2002); State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985). The harmless error analysis ensures that criminal defendants may not obtain new trials whenever it is possible to identify a constitutional issue not raised below. Id.
¶ 46 We examine each aggravating factor independently, comparing its legal meaning to the instruction the jury actually had, to determine whether, beyond a reasonable doubt, the jury would have reached the same result in the absence of the error.
¶ 47 "Deliberate cruelty" is "gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself .... the cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense." Tili, 148 Wash.2d at 369, 60 P.3d 1192.[11] Gordon asserts that the *531 jury instruction given did not communicate to the jury the actual legal standard. Gordon is correct.
¶ 48 A jury is certainly capable of understanding both words in isolation from one another, as they are words of ordinary understanding and are self-explanatory. Brown, 132 Wash.2d at 611-12, 940 P.2d 546. Together, they form a legal term of art, where two concepts essential to its meaning are conspicuously absent from the commonsense meaning of the words themselves.[12] Neither the concept of gratuitous violence nor the comparative element (requiring a relative assessment of the crime at hand with other crimes of that sort) is concomitant with the words themselves, either individually or as a compound term.
¶ 49 Without additional definition based on the articulation in Tili, the instruction on deliberate cruelty did not inform the jury of the applicable law. See State v. Edwards, 84 Wash.App. 5, 14, 924 P.2d 397 (1996). See also Maynard v. Cartwright, 486 U.S. 356, 363-64, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (where the instruction on the aggravating factor supporting imposition of the death penalty, that the murder was "especially heinous, atrocious, or cruel," was insufficient, because an ordinary person could honestly believe that every intentional taking of human life is especially heinous); Godfrey v. Georgia, 446 U.S. 420, 428-29, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (holding that the jury instruction was insufficient and reversing, where the instruction stated that the death penalty should be imposed if the murder was "outrageously or wantonly vile, horrible and inhuman," as almost anyone could characterize any murder as satisfying that standard).
¶ 50 The jury was not required to consider whether the defendants' conduct was inflicted on Lewis as an end in itself, or whether the cruelty went beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense. Therefore, we find it impossible to conclude, beyond a reasonable doubt, that the jury would have reached the same conclusion with proper instruction.
¶ 51 In Suleiman, the court explained that, in order to justify an exceptional sentence based on victim vulnerability, the jury must find both that the defendant knew of the victim's particular vulnerability, and that this vulnerability was a substantial factor in the commission of the crime.[13] 158 Wash.2d at 291-92, 143 P.3d 795; see also State v. Gore, 143 Wash.2d 288, 317-318, 21 P.3d 262 (2001), overruled on other grounds by State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005).
¶ 52 Gordon asserts that, without an instruction to the jury that the vulnerability and incapability had to be a significant reason for the commission of the crime, the jury's findings are fatally flawed. Gordon is again correct. The commonsense meaning of "particular vulnerability" reflects only part of its legal meaning.[14] A jury would readily *532 understand the concept of vulnerability. However, without instruction, a jury would not consider whether the vulnerability is a substantial reason for the commission of the crime. The instruction given here did not allow the jury to deliberate over this element. The instruction on the victim vulnerability factor was deficient under Suleiman.
¶ 53 We likewise find it impossible to conclude, beyond a reasonable doubt, that the jury would have reached the same conclusion had its deliberations been framed by this additional inquiry. The error here was not harmless. We reverse the exceptional sentence.[15]

IV. Findings and Conclusions Regarding the Exceptional Sentence

¶ 54 Gordon argues that the trial court violated RCW 9.94A.535 and RCW 9.94A.537 by making its own factual findings and relying on them in imposing the exceptional sentences. Because this issue may arise again in further proceedings, we address it.
¶ 55 After Blakely, the trial court retains its discretion to determine whether the jury's findings "are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.537(6). But, the jury must determine the factual basis for the aggravating circumstances, and the trial court is "left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence." Suleiman, 158 Wash.2d at 290-91, 143 P.3d 795.
¶ 56 The legislature amended our statutes to conform to Blakely. Nevertheless, RCW 9.94A.535 still requires that "[w]henever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." The trial court comported with this requirement, through its findings and conclusions regarding the exceptional sentence. However, in finding of fact 7, the court listed evidence that "supported the jury's verdict and that also supports the court's conclusions of law." The evidence it listed was not established as having been found beyond a reasonable doubt through special verdict, which contained only a yes/no question about whether each aggravating factor existed. Conclusions of law 9-13 also contain findings of fact not found by the jury beyond a reasonable doubt. To the extent the trial court went beyond the findings made by the jury, it erred.

V. Sufficiency of the Evidence

¶ 57 Bukovsky asks this court to review the sufficiency of the evidence to support the exceptional sentence. Though he did not challenge on appeal the constitutionality of the jury instructions,[16] the jury deliberated *533 on Bukovsky's verdict with identical instructions as it did on Gordon's. The same instructional defects are present; the constitutional violation is the same.
¶ 58 Aware of the inevitability of both a subsequent personal restraint petition by Bukovsky and its success, we invoke RAP 1.2(a) ("These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands."). In the interest of promoting justice and facilitating a decision on the merits, we recognize that the issues and assignments of error are equally applicable to Bukovsky's case as they are to Gordon's. We hold that the exceptional sentence for Bukovsky must also be reversed. We decline to evaluate the sufficiency of the evidence under the jury instructions we have held to be constitutionally defective.
¶ 59 We vacate the exceptional sentences of both defendants and remand for further proceedings.
WE CONCUR: LEACH and GROSSE, JJ.
NOTES
[1] Iosia Gisa joined in the fight as well, delivering several kicks to the victim's body and head. He was not mentioned in the determination of probable cause.
[2] Knoefler entered into a plea bargain and testified against the defendants at trial. Puapuaga's trial was severed when the Washington Supreme Court granted direct discretionary review. State v. Puapuaga, 164 Wash.2d 515, 192 P.3d 360 (2008).
[3] Bukovsky argues specifically that RCW 9A.32.050(1)(b) is unconstitutional on its face. A person challenging a statute for facial invalidity must demonstrate that there is no set of circumstances in which the statute, as written, can be constitutionally applied. City of Redmond v. Moore, 151 Wash.2d 664, 669, 91 P.3d 875 (2004). Bukovsky's facial challenge fails, as this court's decision in State v. Armstrong demonstrates that there is at least one circumstance in which the statute was applied constitutionally. 143 Wash.App. 333, 340, 178 P.3d 1048 (2008) (holding that felony murder statute satisfies rational basis review, where defendant was charged and convicted of second degree felony murder based on the predicate crime of second degree assault), review denied, 164 Wash.2d 1035, 197 P.3d 1185 (2008). If a statute is unconstitutional on its face, the proper remedy is to render the statute totally inoperative. Moore, 151 Wash.2d at 669, 91 P.3d 875. The remedy Bukovsky seeks is unavailable.
[4] For purpose of felony murder, a homicide is deemed committed during the perpetration of a felony if the homicide is within the "res gestae" of the felony, i.e., if there was a close proximity in terms of time and distance between the felony and homicide. Leech, 114 Wash.2d at 706, 790 P.2d 160.
[5] There are statutory criteria regarding the procedure for imposition of a sentence above the standard range passed to bring sentencing procedures into conformity with Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). RCW 9.94A.537. "The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory." RCW 9.94A.537(3).
[6] Counsel for both Bukovsky and Gordon objected to the court's decision to give the jury the special verdict question regarding victim vulnerability on the grounds that it was inapplicable to the facts of the case. They did not specifically object to the court's instructions defining victim vulnerability or deliberate cruelty or propose their own. Absent objection or proposal of their own jury instructions, the issue has not been preserved for review. RAP 2.5(a). Nor is the objection to the special verdict question sufficient to preserve the issue of the constitutional sufficiency of the accompanying jury instructions.
[7] The central holding in Apprendi is that a jury, not a judge, must find, beyond a reasonable doubt, the facts that serve to increase the penalty for a crime beyond the statutory maximum. 530 U.S. at 490, 120 S.Ct. 2348. For Apprendi purposes, the statutory maximum is defined as the sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely, 542 U.S. at 302-04, 124 S.Ct. 2531. Before these seminal cases, the trial judge had the authority to be the fact finder for purposes of aggravating factors, obviating the need for jury instructions on their legal meaning. Now, juries are left to deliberate over whether the defendants actions satisfy the aggravating factors.

However, After Blakely, the trial court retains its discretion to determine whether the jury's findings "are substantial and compelling reasons justifying an exceptional sentence," RCW 9.94A.537(6), but the jury must determine the factual basis for the aggravating circumstances.
[8] If a jury convicted a defendant of a second degree offense based on its finding beyond a reasonable doubt that he unlawfully possessed a prohibited weapon, the hate crime statute allowed a judge to elevate the punishment to a level commensurate with the punishment for the crime in the first degree, based on the judge's finding that the defendant's purpose for unlawfully possessing a weapon was to intimidate his victim on the basis of a particular characteristic of the victim. Apprendi, 530 U.S. at 491-92, 120 S.Ct. 2348. The statutory scheme treated the required finding of the defendant's biased purpose not as an element, but as a sentencing factor. Id.
[9] State v. Kincaid states that aggravating factors are sentence enhancers, not essential elements of the crime itself. 103 Wash.2d 304, 307, 692 P.2d 823 (1985). There, the court held that aggravating factors do not have to be included in the "to convict" instruction for the underlying offense. Id. However, incorporated into its holding is a crucial caveat: "it is unnecessary that the aggravating circumstances ... be set forth as elements of the offense in the `to convict' instruction on the underlying murder charged; provided, as here, the jury is otherwise properly instructed as to how the existence of any such aggravating circumstances is to be determined." Id. (emphasis added).

In State v. Brown, 132 Wash.2d 529, 612-613, 940 P.2d 546 (1997), the court considered Brown's argument that the trial court's refusal to define the phrases "in the course of," "in furtherance of," or "in immediate flight" violated his due process rights, because they were essential elements of the aggravators. Id. at 611, 940 P.2d 546. The court did not squarely reject Brown's characterization of these phrases as elements of the aggravators. See id. at 612, 940 P.2d 546. Rather, it analyzed the situation as a failure to give a definitional instruction, having already concluded that the terms were expressions of common understanding. See id. at 611-612, 940 P.2d 546. There is no need to define words that are commonly understood. And, failure to give a definitional instruction cannot be equated with failure to instruct on an essential element. Id. at 612, 940 P.2d 546; Scott, 110 Wash.2d at 690, 757 P.2d 492.
[10] The State cites to State v. Roswell, 165 Wash.2d 186, 194, 196 P.3d 705 (2008), for the proposition that an aggravating factor is not an element of the substantive crime, in an effort to defeat Gordon's argument based on Apprendi. The State is correct. However, nothing in our holding suggests that aggravating factors are elements of the substantive crime. Rather, for purposes of jury instructions and the Sixth Amendment, aggravating factors must be treated as elements of an aggravated form of the crime. This comports with the court's observation in Roswell, that "an aggravating factor must be treated like an element for purposes of the Sixth Amendment to the United States Constitution." 165 Wash.2d at 194, 196 P.3d 705.
[11] Although the Washington Pattern Jury Instructions do not create mandatory jury instructions, they are helpful in analyzing instructional error, and reflect the law as articulated in Tili. 11A Washington Practice: Washington Pattern Jury Instructions: Criminal (3d ed. 2008) (WPIC); State v. Mills, 116 Wash.App. 106, 116 n. 24, 64 P.3d 1253 (2003), reversed on other grounds, 154 Wash.2d 1, 109 P.3d 415 (2005). WPIC 300.10, at 705, states that, for the aggravating circumstance of deliberate cruelty, the following instruction should supplement the primary statement of the aggravating factor: "`deliberate cruelty' means gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself, and which goes beyond what is inherent in the elements of the crime [or is normally associated with the commission of the crime]." (Alteration in original.)
[12] We recognize that the jury in Tili did not decide the aggravating factor, as it was pre-Blakely. 148 Wash.2d at 369, 60 P.3d 1192. Therefore, looking to the dictionary definitions of both words is instructive in determining how a jury might define the terms for themselves. "Deliberate" means "characterized by or resulting from slow careful thorough calculation and consideration of effects and consequences." Webster's Third New International Dictionary 596 (1993). "Cruelty" means the "disposition to inflict pain or suffering or to enjoy its being inflicted." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 546 (1993).
[13] WPIC 300.11, at 706, reflects the rule in Suleiman, suggesting the definition of particularly vulnerable victim be: "A victim is `particularly vulnerable' if he or she is more vulnerable to the commission of the crime than the typical victim of (name of crime). The victim's vulnerability must also be a substantial factor in the commission of the crime."
[14] For example, courts have upheld a finding of victim vulnerability when the victim was of small stature. See, e.g., State v. Sweet, 138 Wash.2d 466, 482, 483, 980 P.2d 1223 (1999). Courts have also found that very young victims or elderly victims are particularly vulnerable. See, e.g., State v. Jacobsen, 95 Wash.App. 967, 979-80, 977 P.2d 1250 (1999) (where the victim was a five year old); State v. Scott, 72 Wash.App. 207, 217, 866 P.2d 1258 (1993) (where victim was a 78 year old who suffered from Alzheimer's disease), aff'd, State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995). In State v. Hicks, 61 Wash.App. 923, 931, 812 P.2d 893 (1991), the court explained that a sleeping victim is particularly vulnerable due to inability to resist before being attacked, rejecting the defendant's argument that all sleeping persons are vulnerable, and therefore no particular vulnerability existed. The legal meaning of "particular" vulnerability comports with a commonsense understanding. However, whether the vulnerability is a substantial reason for the commission of the crime does not comport with its ordinary meaning.

Courts have also found that victims can become particularly vulnerable or incapable of resistance if a defendant renders the victim unconscious during the course of the crime. In State v. Baird, the court found the victim became particularly vulnerable or incapable of resistance, because the defendant rendered her unconscious during the crime. 83 Wash.App. 477, 487-88, 922 P.2d 157 (1996). Similarly, in State v. Ogden, Ogden hit the victim, who was not particularly vulnerable at the beginning of the attack, rendering the victim unconscious. 102 Wash. App. 357, 367, 7 P.3d 839 (2000). While we note the similarity of the facts here to the facts in Ogden and Baird, we are nevertheless unable to sustain the exceptional sentence absent proper jury instruction as required by Suleiman.
[15] Because we reverse the exceptional sentence based on the instructional issue, we do not reach the following issues Gordon and Bukovsky raised: ineffective assistance of counsel and whether the sentences were clearly excessive.
[16] Bukovsky did argue that, because the evidence did not support a conclusion that Lewis was particularly vulnerable, it was error for the trial court to send the special verdict on that aggravating factor to the jury. However, neither the objection on the record nor the brief appellate argument on this point is similar enough to Gordon's constitutional argument to satisfy the requirements of RAP 10.3(4), (6).