[No. 3400–2.   Division Two.   August 2, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS EDSEL BURLEY, *Appellant.*

*Millard Rowlette* and *Donald A. Greig* of Clark County Legal Defense Services, for appellant.

*James E. Carty, Prosecuting Attorney,* for respondent.

PEARSON, C.J.—Defendant Thomas Edsel Burley was convicted in Clark County Superior Court of first–degree manslaughter. He claims on appeal that his constitutional right of equal protection was violated in that there is no

real distinction between the first– and second–degree manslaughter statutes. RCW 9A.32.060, RCW 9A.32.070. We find no constitutional or other error and affirm.

At approximately 10 p.m. on November 27, 1977, defendant stabbed his nephew Rodney Orweller in the chest with a large jackknife. Rodney died 15 minutes later. The autopsy showed that Rodney had been killed by one thrust which damaged many of his internal organs; the precise cause of death was a 1/4–inch laceration in Rodney's heart.

Defendant was arrested at the scene and charged with first–degree murder. Trial was held in January 1978. Defendant never denied stabbing Rodney. Rather, he argued that he had acted in self–defense, and that, in any event, he had never intended to kill Rodney. The jury was instructed on first– and second–degree murder and on first–degree manslaughter. Defendant's proposed instructions on second–degree manslaughter were refused by the trial court. The jury found defendant guilty of first–degree manslaughter. Defendant initiated this appeal after his motion for a new trial or arrest of judgment was denied.

The basis for defendant's post–verdict motion was his belief that there is no "real" distinction between the first– and second–degree manslaughter statutes. RCW 9A.32.060; RCW 9A.32.070. As his first assignment of error, defendant argues that the trial court erred in denying his motion. It is true that a statute or statutes which prescribe different punishments for the same acts committed under the same circumstances by persons in like situations are in violation of the equal protection clauses of the state and federal constitutions, and that a criminal conviction based thereon cannot stand. *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970); *State v. Ensminger,* 77 Wn.2d 535, 463 P.2d 612 (1970); *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956). This rule, of course, applies only when the statutes describe identical crimes: the equal protection guaranties are not contravened if the statutes require proof of different elements in order to convict for each offense.

*State v. Reid,* 66 Wn.2d 243, 401 P.2d 988 (1965); *State v. Eckman,* 9 Wn. App. 905, 515 P.2d 837 (1973). *See also State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978).

On their face, the statutes which describe first– and second–degree manslaughter are clearly distinguishable. RCW 9A.32.060(1) provides: "A person is guilty of manslaughter in the first degree when: (a) He *recklessly* causes the death of another person . . ." (Italics ours.) An individual acts recklessly

> when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

RCW 9A.08.010(1)(c). RCW 9A.32.070(1) provides: "A person is guilty of manslaughter in the second degree when, with *criminal negligence,* he causes the death of another person." (Italics ours.) An individual acts with criminal negligence

> when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.

RCW 9A.08.010(1)(d).

■ Defendant argues, however, that his equal protection rights were violated because *as a practical matter* there is no difference between the two degrees of manslaughter. We disagree. Certainly the trier of fact should be able to tell the difference between conduct undertaken with the knowledge that the actor is creating a grave risk of danger to others, and conduct undertaken in "culpable" ignorance of such danger. We note that our holding in this regard is consistent with the rationale of a number of New York cases that have considered the question of the distinction between reckless and criminally negligent homicide in a variety of contexts. *See, e.g., People v. Strong,* 37 N.Y.2d

568, 338 N.E.2d 602, 376 N.Y.S.2d 87 (1975); *In re Will of Wells,* 76 Misc. 2d 458, 350 N.Y.S.2d 114 (1973).[1]

■■ Defendant next contends that the trial court improperly refused to instruct the jury on the lesser included offense of second–degree manslaughter. An accused is entitled to an instruction on an offense included in the charged crime only if the record contains evidence that would support a conviction on the lesser crime. *State v. Strand,* 20 Wn. App. 768, 582 P.2d 874 (1978). Defendant argues that the record contained sufficient evidence of intoxication to create a jury question as to whether he was capable of perceiving the magnitude of the risk created by his actions. Evidence of intoxication included defendant's own statements as to the amount of alcohol he had consumed and the results of a Breathalyzer test taken several hours after the stabbing. The test showed that at 1:45 a.m. on November 28, defendant's blood contained .15 percent alcohol. The jury was informed by Dr. Archie Hamilton, a pathologist, that an individual with this type of alcohol reading would be "halfway between sober and being stuporous." The mere fact that evidence shows that the accused had consumed alcohol does not make it necessary to give a lesser included offense instruction. The record must also show that the accused's mental processes—his ability to form the requisite mental state—were affected by his drinking. *State v. Boyd,* 21 Wn. App. 465, 586 P.2d 878 (1978); *State v. Thompson,* 17 Wn.2d 639, 564 P.2d 820 (1977); *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). The record in this case simply does not contain substantial evidence in support of the requested instruction. In fact, defendant's own testimony—that he did not intend to kill Rodney, but that he did intend to scare him

---

[1]Defendant's reliance on the Colorado case of *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975) is misplaced. Under Colorado law as it read at the time *Calvaresi* was tried, recklessness and criminal negligence were both defined as involving culpable ignorance. C.R.S. § 40–1–601(8), (9) (repealed). The Washington scheme does not contain the same flaw as did the "old" Colorado classification system.

with the knife—tends to establish affirmatively that defendant was capable of forming the requisite mental state and to disprove the lesser included offense theory.

Finally, defendant urges that the trial court improperly restricted him from impeaching a State's witness by proving a conviction that had been dismissed pursuant to RCW 9.95.240.[2] We find no reason to overrule our holding in *State v. Walker*, 14 Wn. App. 348, 541 P.2d 1237 (1975) and find that the ruling was proper.

Judgment affirmed.

REED and SOULE, JJ., concur.

Reconsideration denied September 7, 1979.

Review denied by Supreme Court December 7, 1979.

---

[2]RCW 9.95.240 provides for the dismissal of the indictment or information of an individual who successfully completes the terms of his or her probation.