IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33230-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HARVEY CLEM MADDUX, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Harvey Maddux pleaded guilty to second degree assault and fourth degree assault after he was accused of confronting two men outside a gas station and brandishing a knife. After entering the plea but before sentencing, Mr. Maddux sought to withdraw his guilty plea for second degree assault, claiming that his plea was not entered knowingly. Mr. Maddux contended that defense counsel failed to advise him of the intent element of second degree assault and that had he known that intent to assault was an element of the crime, he would not have pleaded guilty. The trial court denied Mr. Maddux's motion to withdraw his guilty plea and sentenced Mr. Maddux on both assault charges as well as charges from two other consolidated cases. Mr. Maddux appeals. He challenges the trial court's conclusion that his plea was

knowingly, voluntarily, and intelligently entered. Also, he contends that the State breached the plea agreement by not following the agreed upon sentencing recommendation. We disagree with his contentions and affirm.

## FACTS

On August 22, 2013, a Centralia police officer was dispatched to an assault complaint involving Mr. Maddux. The caller complained that Mr. Maddux attacked him with a knife while at a Texaco gas station store.

On August 23, 2013, the Lewis County prosecutor charged Mr. Maddux with first degree assault with a deadly weapon enhancement and fourth degree assault. Mr. Maddux was already facing prosecution for one count of possession of methamphetamine, filed on July 2, 2013. At the first appearances for each case, the court appointed the same attorney to represent Mr. Maddux. Mr. Maddux's attorney worked out a plea bargain with the prosecutor whereby the State would amend the first degree assault to second degree assault without a deadly weapon enhancement on Mr. Maddux's plea to that charge along with the companion fourth degree assault charge and the possession charge from the earlier case.

Under the plea agreement, the State would ask for 24 months on the possession charge, 364 days on the fourth degree assault charge, and 63 months on the second degree assault charge, all sentences to be served concurrently. The second degree assault charge had a standard sentencing range of 63 to 84 months.

2

The prosecutor signed this document along with Mr. Maddux and his attorney. The plea agreement as reflected in the guilty plea form did not bind Mr. Maddux to any recommendation and the parties specifically understood that Mr. Maddux would be asking to set a future sentencing date at which he would seek a sentence below the standard sentencing range.

Based on this agreement, the prosecutor filed an amended information reducing the charge in count I from first degree assault to second degree assault and striking the deadly weapon enhancement. The parties appeared before the trial court on September 30, 2013, and Mr. Maddux pleaded guilty to possession of methamphetamine, second degree assault, and fourth degree assault pursuant to the plea agreement. Mr. Maddux entered an *Alford* plea on the assault charges, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), in which he denied that he committed the assaults but admitted that if he went to court, that he would likely be found guilty; and he wished to take advantage of a favorable sentencing offer from the State.

The trial court asked the State what evidence it would present with respect to the assault charges. The State informed the court that on August 22, 2013, dispatch received two calls reporting an assault at the Texaco gas station. The first caller stated that a male was beating on a car in front of the store. The second caller claimed that he had just been attacked with a knife by the same male who then ran into the car wash. Centralia Police Officer Weismiller was dispatched to the gas station and contacted one of the victims,

3

Edward Baker. Then, Officer Weismiller checked the car wash with negative results. An unknown male at the gas pump yelled to all the responding officers that the crazy guy left in a black truck. Officers saw the black truck stopped at the traffic light and approached. Mr. Baker identified the sole male in the truck as his attacker.

Officer Weismiller conducted a felony stop and ordered the male driver to exit the vehicle. Officer Weismiller recognized the driver, Mr. Maddux, from prior contacts. Once out of the vehicle, Mr. Maddux was searched for weapons. Officers located two knives and a bottle of pepper spray. Mr. Maddux was detained while the complaining parties were interviewed. During contact with Mr. Maddux, the officers observed his actions to be consistent with someone under the influence of a controlled substance.

Officer Weismiller interviewed Mr. Baker. Mr. Baker said that he had pulled to the side of the road near the Interstate 5 ramp to make a telephone call. While Mr. Baker was on the telephone, Mr. Maddux walked up to Mr. Baker's vehicle and began pounding on his passenger side door as well as screaming through the window. Using profane language, Mr. Maddux asked Mr. Baker what he was doing. Mr. Baker explained that he was on the telephone and asked Mr. Maddux if he had a problem. Mr. Maddux produced a knife and held it in his hand with the blade up. With his other hand, Mr. Maddux pulled at the passenger door handle in an attempt to open the locked door. After Mr. Maddux was unable to gain entry to the vehicle, he hit the passenger side window with the knife. Mr. Baker drove up the Interstate 5 ramp a short distance and called 911.

4

Mr. Baker told officers that it was obvious that Mr. Maddux was trying to enter his vehicle. Also, Mr. Baker felt that he would be assaulted if Mr. Maddux gained entry to the vehicle. Officers observed multiple deep gashes in the passenger side window.

Officer Weismiller interviewed victim two, Jason Beatty, a customer in the nearby convenience store. Mr. Beatty said that he saw a black truck pull up and park. The driver of the truck, Mr. Maddux, nearly fell out and began to yell and pound his chest. Mr. Beatty exited the store and began walking to his vehicle when he observed Mr. Maddux running toward him. Mr. Beatty jumped in his vehicle and locked the door. Mr. Maddux stuck his hand through the Mr. Beatty's vehicle window and grabbed Mr. Beatty by the shirt. Mr. Beatty tried to push Mr. Maddux back and roll up the window. In response, Mr. Maddux pulled his arm out of the window and then stood in front of Mr. Beatty's vehicle to prevent him from leaving. Mr. Beatty was eventually able to drive away and call 911.

After presentation of this evidence, the trial court asked Mr. Maddux if he agreed that the State would produce the recited evidence if the matter went to trial. Mr. Maddux agreed, but he stated that this was not all of the evidence. However, he agreed that this evidence would be enough for the jury to find him guilty. The court accepted Mr. Maddux's *Alford* pleas. The court also granted Mr. Maddux's request to continue sentencing to a future date.

5

On December 10, 2013, the parties appeared before the court with the defense again asking for the sentencing court to continue the sentencing date so that Mr. Maddux could obtain some of his mental health records to support a request for an exceptional sentence below the standard range. At that time, Mr. Maddux also argued a pro se motion to dismiss based on the jail's failure to provide him with access to the law library or legal materials. In the alternative, Mr. Maddux argued a motion for release. The court granted the motion to continue sentencing and denied both of Mr. Maddux's pro se motions.

Following this second hearing, Mr. Maddux became convinced that his attorney misinformed him about the law of assault and had he not been misinformed, he would not have entered a guilty plea to either assault charge. Based on Mr. Maddux's revelation of this to the trial court, the trial court granted defense counsel's motion to withdraw and appointed new defense counsel so that Mr. Maddux could pursue a motion to withdraw his guilty plea.

On February 11, 2014, Mr. Maddux filed a pro se motion to withdraw his guilty plea to the assault charges. Two days later, Mr. Maddux's new counsel filed a memorandum in support of the pro se motion. Mr. Maddux argued (1) that he had not intended to assault either of the complaining witnesses, (2) that he did not display a knife for the purpose of scaring either complaining witness, (3) that his attorney misinformed him of the law of assault by stating that the only relevant inquiry was into the

6

apprehension of the complaining witness and that the defendant's intent was irrelevant, and (4) had he known that the State had to prove that he acted with intent to assault, he would not have pleaded guilty and would have gone to trial.

On February 19, 2014, the State filed a third information against Mr. Maddux alleging that on February 18, 2014, Mr. Maddux committed the crime of second degree malicious mischief by knowingly damaging a computer kiosk screen in the jail. At the arraignment on this new charge, the trial court appointed the same attorney to represent Mr. Maddux as in the motion to withdraw his guilty plea.

On March 21, 2014, the trial court held a hearing on Mr. Maddux's motion to withdraw his guilty plea. In support of his motion, Mr. Maddux called his former appointed attorney who represented him at the plea hearing. The attorney testified that at his first meeting with Mr. Maddux, they discussed the charging documents, and Mr. Maddux was aware of the elements for first degree assault. Mr. Maddux was concerned about the significant sentence range for first degree assault with his offender score of 9 plus. The attorney also testified that Mr. Maddux knew he was pleading to second degree assault and did it willingly. The attorney remembered discussing the change of plea statement with Mr. Maddux at length, and that the statement included the elements of second degree assault.

The attorney testified that after the plea was entered, Mr. Maddux became convinced that there was no possible way that he could ever be convicted of second

7

degree assault under the facts of his case. The attorney believed Mr. Maddux felt his plea was not valid because Mr. Maddux erroneously thought that the short blade knife he used could never be considered a deadly weapon and that he did not have the necessary intent for second degree assault. In trying to explain the intent element to Mr. Maddux, the attorney testified, "[W]hat I was trying to get across to him was you can't just come in and say I didn't intend to do that. That might not be enough in the jury's eyes. A lot has to do with the fact that he was just sitting in the car and being accosted by Mr. Maddux under the circumstances." Report of Proceedings (RP) at 35-36. Later, the attorney testified that Mr. Maddux "didn't think he would get convicted, because he didn't have the intent to cause the apprehension in the victim and I tried to make sure that once again that's from the victim's point of view in essence as to the apprehension whether he intended to cause that apprehension." RP at 79.

Mr. Maddux also testified at the hearing. He stated that his former attorney spent little time with him, that the attorney did not interview witnesses, and that the attorney pressured him into accepting a plea bargain at the last minute without letting him read the guilty plea form. In addition, Mr. Maddux stated that his attorney misinformed him of the law of assault by stating that Mr. Maddux's intent was irrelevant. Mr. Maddux claimed that he never intended to assault anyone and that had he known that the law required that the State prove intent, he would not have pleaded guilty and would have gone to trial.

8

The trial court denied Mr. Maddux's motion to withdraw his plea. The court entered findings of fact and conclusions of law in support of its ruling. Of specific importance, the court stated in finding of fact 1.19 that Mr. Maddux was informed by his attorney of the proper definition of assault. The court concluded that Mr. Maddux received effective assistance of counsel and that he knowingly, voluntarily, and intelligently gave up his rights by pleading guilty. The court also concluded that by filing the motion to withdraw the guilty plea was a repudiation of the agreement by Mr. Maddux.

On April 2, 2014, the parties appeared before the court on all three cases. Mr. Maddux entered an *Alford* plea on the new malicious mischief charge. In Mr. Maddux's guilty plea statement for malicious mischief, the prosecuting attorney promised to recommend a 29-month sentence, $200 filing fee, $500 crime victim assessment, $600 attorney fee, $89/day jail fee up to $1,000, $100 DNA[1] fee, $100 domestic violence fee, subpoena service fee to be determined, and restitution in the amount of $1,046.

Following the trial court's acceptance of Mr. Maddux's plea to the malicious mischief charge, the court heard sentencing recommendations on all three cases. For the second degree assault charge, the State recommended 84 months, which was contrary to

---

[1] Deoxyribonucleic acid.

the 63-month recommendation in its plea agreement with Mr. Maddux. The State

maintained that it was not bound by the plea agreement, arguing:

> So based on the defendant's new conviction, the State believes that it
> is free to recommend whatever sentence it feels is appropriate. We also
> feel we are free to recommend anything that we see is appropriate, based
> upon the clear violation of the Plea Agreement, by the defendant's filing of
> a Motion to Withdraw his guilty plea and be quote, unquote, "exonerated."

RP at 178. In contrast, Mr. Maddux asked for 63 months on the second degree assault

charge pursuant to his agreement with the State.

Both the prosecutor and Mr. Maddux asked for 364 days on the fourth degree

assault charge, 24 months on the possession charge, and 29 months on the new malicious

mischief charge. However, the State requested that the assault and drug sentences run

concurrent to each other but consecutive to the malicious mischief charge, while Mr.

Maddux asked for all counts to run concurrent.

The court sentenced Mr. Maddux to concurrent sentences of 75 months for second

degree assault, 364 days for fourth degree assault, and 24 months for possession. The

court then imposed 22 months for malicious mischief, running consecutive to the other

terms of incarceration as an exceptional sentence. The court found that Mr. Maddux

committed multiple concurrent offenses and that his high offender score resulted in some

of the current offenses going unpunished. The court also found that Mr. Maddux

committed the crime while incarcerated, pending sentencing on the two other criminal

matters.

Mr. Maddux appeals. Although Mr. Maddux appeals the judgments and sentences

for all three cause numbers, which were consolidated on appeal, his arguments focus on

his conviction for second degree assault. First, he challenges the trial court's finding that

he was informed by his attorney of the proper definition of second degree assault and the

court's conclusion that his plea was knowingly, voluntarily, and intelligently entered.

Second, he contends that the State breached the plea agreement by not recommending the

agreed upon sentence. Last, Mr. Maddux raises several related issues in his statement of

additional grounds for review.

## ANALYSIS

1.    *Whether the trial court abused its discretion when it denied Mr. Maddux's motion
      to withdraw his guilty plea*

An appeal court reviews a trial court's decision on a motion to withdraw a guilty

plea for an abuse of discretion. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012).

An abuse of discretion occurs if a trial court's decision is manifestly unreasonable or is

based on untenable grounds or reasons. *Id.* A manifestly unreasonable decision is one

that is outside the range of acceptable choices, given the facts and applicable legal

standard. *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362

(1997)).

A trial court's decision is based on untenable reasons if it uses an incorrect

standard or if the facts do not meet the requirements of the correct standard. *Id.* (quoting

11

*Littlefield*, 133 Wn.2d at 47). The correct standard for a trial court to use when a defendant moves to withdraw his guilty plea prior to judgment is whether withdrawal is necessary to correct a manifest injustice. *Id.* at 128; CrR 4.2(f). Manifest injustice is a demanding standard. *State v. Bao Sheng Zhao*, 157 Wn.2d 188, 197, 137 P.3d 835 (2006). "[A] 'manifest injustice' is 'an injustice that is obvious, directly observable, overt, [and] not obscure.'" *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). Courts have found instances of manifest injustice where (1) effective assistance of counsel was denied, (2) the plea was not ratified by the defendant, (3) the plea was not voluntary, or (4) the plea agreement was not kept. *Saas*, 118 Wn.2d at 42 (quoting *Taylor*, 83 Wn.2d at 597).

A trial court's decision is based on untenable grounds if the factual findings are unsupported by the record. *Lamb*, 175 Wn.2d at 127 (quoting *Littlefield*, 133 Wn.2d at 47). "An appellate court reviews whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Brockob*, 159 Wn.2d 311, 343, 150 P.3d 59 (2006). Substantial evidence is evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). "Unchallenged findings of fact are verities on appeal, and an appellate court reviews only those facts to which the appellant has assigned error." *Brockob*, 159 Wn.2d at 343. The appellate court defers to the fact finder regarding credibility of witnesses and the weight to be

12

given to reasonable but competing inferences. *State ex. rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992).

Mr. Maddux contends that the trial court abused its discretion when it denied his motion to withdraw his guilty plea. Mr. Maddux contends that his plea was not knowingly and voluntarily entered because he was misinformed by his attorney of the proper definition of assault. Specifically, Mr. Maddux claims that his attorney failed to inform him that assault required the State to prove intent.

A trial court shall not accept a guilty plea without first determining that the plea is made voluntarily, competently, and with an understanding of the nature of the crime and the consequences of the plea. CrR 4.2(d). Additionally, the court shall not enter a judgment on a plea of guilty unless it is satisfied that there is a factual basis for the plea. CrR 4.2(d). "Due process requires that a defendant be apprised of the nature of the offense in order for a guilty plea to be accepted as knowing, intelligent, and voluntary." *State v. Osborne*, 102 Wn.2d 87, 92-93, 684 P.2d 683 (1984). "At a minimum, 'the defendant would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime.'" *Id.* at 93 (quoting *In re Pers. Restraint of Keene*, 95 Wn.2d 203, 207, 622 P.2d 360 (1980)).

RCW 9A.36.021(1)(c) provides that a person is guilty of second degree assault if he or she, under circumstances not amounting to assault in the first degree, assaults another with a deadly weapon. The *Washington Pattern Jury Instruction: Criminal* sets

13

forth the common law definitions for assault. *State v. Smith*, 159 Wn.2d 778, 781-82,

154 P.3d 873 (2007). The common law assault definition does not provide an additional

means of committing assault, but instead elaborates and clarifies the term "assault" as

used in statutes. *Id.* at 785-86. Assault is defined in three ways: (1) An intentional

touching, striking, cutting, or shooting of another person, with unlawful force, that is

harmful or offensive regardless of whether any physical injury is done to the person. A

touching, striking, cutting, or shooting is offensive if it would offend an ordinary person

who is not unduly sensitive; (2) An act, with unlawful force, done with intent to inflict

bodily injury on another, tending but failing to accomplish it and accompanied with the

apparent present ability to inflict the bodily injury if not prevented. It is not necessary

that bodily injury be inflicted; and (3) An act, with unlawful force, done with the intent to

create in another apprehension and fear of bodily injury, and which in fact creates in

another a reasonable apprehension and imminent fear of bodily injury even though the

actor did not actually intend to inflict bodily injury. 11 WASHINGTON PRACTICE:

WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50, at 547 (3d ed. 2008)

(WPIC).

"[S]pecific intent either to create apprehension of bodily harm or to cause bodily

harm is an essential element of assault in the second degree." *State v. Byrd*, 125 Wn.2d

707, 713, 887 P.2d 396 (1995). Intent "'can be inferred as a logical probability from all

facts and circumstances.'" *State v. Yarbrough*, 151 Wn. App. 66, 87, 210 P.3d 1029 (2009) (quoting *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

The trial court did not abuse its discretion in denying Mr. Maddux's motion to withdraw his guilty plea. First, substantial evidence supports the trial court's finding that Mr. Maddux was informed by his original attorney of the proper definition of assault. Specifically, Mr. Maddux's attorney informed him of the intent element of the crime. For instance, Mr. Maddux's attorney provided him with all charging documents. The charging information for both first degree assault and second degree assault listed intent to assault as an element of the crime. The attorney discussed the charging documents with Mr. Maddux. The attorney testified that Mr. Maddux was aware of the elements for first degree assault. In addition, the attorney sent Mr. Maddux case law that explained the definition of assault.

Mr. Maddux testified that intent was discussed, although it confused him. The record shows that when entering his guilty plea, Mr. Maddux considered intent and potential that the jury could find this element. Mr. Maddux entered an *Alford* plea because he never intended to cause harm, but understood that the jury could find otherwise based on the evidence and the victim testimony. Mr. Maddux was more concerned with the length of the sentence for first degree assault with his offender score of over 9 points. He understood that by accepting the plea offer for second degree assault, the standard range sentence was significantly less.

15

Moreover, there was no basis for the trial court to withdraw Mr. Maddux's plea based on his argument at trial. Mr. Maddux's argument was not that counsel failed to inform him of the intent element, but that counsel's information on intent was incorrect. He contended that he relied on the common law definition for assault based on counsel's information. He maintained that the statute listing the elements for second degree assault with a deadly weapon applied in his case and not common law. However, counsel's information was not erroneous. The common law definition states an intent element for statutory second degree assault. Mr. Maddux's disbelief in counsel's correct information is not grounds for withdrawing the plea. Mr. Maddux's counsel correctly advised him of the intent element for assault.

Mr. Maddux and counsel entered into significant discussions regarding the intent element for second degree assault. As a result, ample evidence supports the trial court's finding that Mr. Maddux's attorney explained the mens rea element under the assault statute.

Second, the court did not err in concluding that Mr. Maddux's guilty plea was knowingly, voluntarily, and intelligently entered. A defendant's signature on a plea statement is strong evidence of voluntariness. *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). A defendant must present some evidence of involuntariness beyond self-serving allegations. *Osborne*, 102 Wn.2d at 97. "An *Alford* plea is valid when it 'represents a voluntary and intelligent choice among the alternative courses of action

16

open to the defendant.'" *State v. Stowe*, 71 Wn. App. 182, 187, 858 P.2d 267 (1993)

(quoting *Alford*, 400 U.S. at 31).

The trial court conducted a thorough colloquy with Mr. Maddux to assure his

guilty plea was knowingly, voluntarily, and intelligently entered. Mr. Maddux

communicated knowing and intelligent understanding of the charges to which he was

pleading and the rights he was giving up. Mr. Maddux was aware of the elements of the

crime, including intent, based on his discussions with counsel. The court questioned Mr.

Maddux at length about the meaning of an *Alford* plea for the assault charge. The State's

evidence in support of the charges was presented to the trial court, and Mr. Maddux

agreed that this evidence was sufficient to support a jury finding of guilty. Additionally,

Mr. Maddux has extensive experience with the criminal court system, dating back 30

years. He stated that his guilty plea was voluntary. The trial court did not err in

concluding that Mr. Maddux's plea was knowingly, voluntarily, and intelligently entered.

Based on the record, the trial court did not abuse its discretion in denying Mr.

Maddux's motion to withdraw his guilty plea. The court's decision was not manifestly

unreasonable nor was it based on untenable grounds or reasons. The court's challenged

findings and conclusions are supported by the record.

2.     *Whether the State was required to abide by its plea agreement with Mr. Maddux*

Mr. Maddux contends that the State breached the plea agreement in the assault

case by recommending an 84-month sentence instead of the agreed upon 63-month

sentence. He contends that this breach entitles him to withdraw his guilty plea on those charges.[2]

"Because a plea agreement is a contract, issues concerning the interpretation of a plea agreement are questions of law reviewed de novo." *State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006). "Due process requires a prosecutor to adhere to the terms of the [plea] agreement." *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). "The State fulfills its obligations if it acts in good faith and does not contravene the defendant's reasonable expectations that arise from the agreement." *State v. McInally*, 125 Wn. App. 854, 861-62, 106 P.3d 794 (2005). When a defendant fails to comply with the terms of a plea agreement, he or she loses the right to enforce the agreement. *Id.* at 867.

If there is a genuine factual dispute as to whether the defendant breached the agreement, remand for an evidentiary hearing is required. *In re Pers. Restraint of James*, 96 Wn.2d 847, 850, 640 P.2d 18 (1982). But if no question exists as to the defendant's breach, this court need not order an evidentiary hearing. *See State v. Hall*, 32 Wn. App. 108, 110, 645 P.2d 1143 (1982).

Section 6(d) of the guilty plea statement between Mr. Maddux and the State reads, "If I am convicted of any new crimes before sentencing, or if any additional criminal

---

[2] Mr. Maddux also contends that his motion to withdraw his guilty plea was not a violation of the plea agreement. Thus, the State could not use this ground as a basis to repudiate the plea agreement. Because another sound reason permitted the State to increase its sentencing recommendation, this issue will not be addressed.

history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me." Clerk's Papers (No. 13-1-00554-3) at 11.

The State did not breach the plea agreement. The agreement between Mr. Maddux and the State allowed the State to increase its recommendation if Mr. Maddux was convicted of new crimes before sentencing. This is exactly what happened. Mr. Maddux was convicted of the crime of malicious mischief between the plea hearing and sentencing.

There is no need to remand for an evidentiary hearing because there is no question as to Mr. Maddux's breach. Mr. Maddux admitted to the new crime of malicious mischief by pleading guilty to the charge. Based on section 6(d) of the plea agreement, the State had the discretion to increase the sentencing recommendation.

STATEMENT OF ADDITIONAL GROUNDS

*1.* *Whether the charging document sufficiently set forth the intent element of assault*

Mr. Maddux raises several issues in his statement of additional grounds. "Ordinarily, a plea of guilty constitutes a waiver by the defendant of his right to appeal, regardless of the existence of a plea bargain." *State v. Majors*, 94 Wn.2d 354, 356, 616 P.2d 1237 (1980). However, a guilty plea does not preclude a defendant from raising collateral issues such as the validity of a statute, sufficiency of the information, jurisdiction of the court, or the circumstances in which the plea was made. *Id.* The

19

majority of Mr. Maddux's arguments in his statement of additional grounds are appealable despite his guilty plea.

First, Mr. Maddux contends that the charging information was insufficient because it failed to set forth the intent element for assault. This contention fails. The common law element of intent does not need to be included in the charging information for second degree assault with a deadly weapon, RCW 9A.36.021(1)(c). *State v. Janes*, 64 Wn. App. 134, 146, 822 P.2d 1238 (1992), *remanded on other grounds*, 121 Wn.2d 220, 850 P.2d 495 (1993). "An assault is by definition an intentional act and is commonly understood as such." *Id.* Even then, Mr. Maddux's charging document included an intent element, as it stated that Mr. Maddux acted intentionally when assaulting Mr. Baker. The charging information sufficiently set forth the intent element for assault.

2.      *Whether Mr. Maddux's counsel provided ineffective representation*

Second, Mr. Maddux contends that his counsel at the plea hearing was ineffective. He claims that his counsel failed to inform him of the acts, elements, and requisite state of mind for assault.

To demonstrate ineffective assistance of counsel, a defendant must show: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding

20

would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Mr. Maddux fails to show that his counsel's performance was deficient. As previously determined here, Mr. Maddux's counsel informed him of all of the elements of second degree assault, including the requisite mens rea for the crime. Counsel gave Mr. Maddux all discovery and charging information, allowed him to review it, and discussed it together.

3. *Whether the trial court conducted a proper colloquy to determine whether Mr. Maddux's plea was knowingly entered*

Third, Mr. Maddux contends that the trial court did not conduct a proper colloquy to determine if his guilty plea was knowingly, voluntarily, and intelligently entered. Specifically, Mr. Maddux contends that the trial court did not confirm if he understood the requisite state of mind for the crime charged.

While a defendant must be aware of the requisite state of mind for the crime charged, the trial court does not need to ask a defendant if he understands each and every element of the crime charged during colloquy. *See In re Pers. Restraint of Ness*, 70 Wn. App. 817, 821-22, 855 P.2d 1191 (1993). "An information which notifies a defendant of the nature of the crime to which he pleads guilty creates a presumption that the plea was knowing, voluntary and intelligent." *Id.* at 821. "A defendant is adequately informed of the nature of the charges if the information details the acts and the state of mind

21

necessary to constitute the crime." *Id.* To determine whether a defendant understands

the charges against him, a trial court may rely on the defendant's plea statement or other

written statements. *Id.*

Pertinent to this contention, the trial court inquired whether Mr. Maddux

understood the charges in the amended information, to which Mr. Maddux answered

"yes." The trial court also offered to read the charges to Mr. Maddux, but Mr. Maddux

declined. The information included the element of intent. Relying on the information, the

court properly concluded that Mr. Maddux understood the elements of second degree

assault, including intent. The trial court did not need to specifically inquire into the

element of intent during colloquy.

4.     *Whether the prosecutor abused its discretion in charging Mr. Maddux with assault*

Fourth, Mr. Maddux contends that the prosecutor abused its discretion by charging

Mr. Maddux with assault because the evidence does not show that anyone was hurt.[3] The

county prosecutor is charged with prosecution of all criminal actions in which the State is

a party. RCW 36.27.020(4). The decision whether to file criminal charges is within the

---

[3] Mr. Maddux relies on RCW 9.94A.411(1)(h)(i) to support his argument. RCW 9.94A.411 provides examples to prosecutors when it is appropriate to decline prosecution even though technically sufficient evidence to prosecute exists. This statute is intended solely for the guidance of Washington prosecutors and may not be relied on to create a right or benefit, substantive or procedural, enforceable at law by any party in litigation with the State. RCW 9.94A.401. Thus, Mr. Maddux may not use this statute to gain relief from the State.

prosecutor's discretion. *State v. Judge*, 100 Wn.2d 706, 713, 675 P.2d 219 (1984).

Exercise of a prosecutor's discretion by charging some but not others guilty of the same

crime does not violate equal protection so long as selection was not deliberately based on

an unjustifiable standard such as race, religion, or other arbitrary classification. *Id.* The

prosecutor considers factors such as the public interest and the strength of the case which

can be proved when deciding when exercising his or her discretion. *Id.*

Mr. Maddux's guilty plea precludes him from challenging his acquiescence to the

charge of second degree assault. Even then, the prosecutor did not abuse its discretion in

charging Mr. Maddux with second degree assault. The prosecutor based its decision on

the elements to be proved and the strength of the evidence. While Mr. Maddux considers

the facts of his case to be innocuous, the evidence is sufficient to support the prosecutor's

charge. Actual injury to a person was not required for the prosecutor to charge Mr.

Maddux with second degree assault. Assault can be proved by showing the defendant

had the intent to cause apprehension of harm. *Byrd*, 125 Wn.2d at 713.

5.     *Whether the assault statute violates equal protection because it prescribes
       different punishments for the same acts committed under the same circumstances*

Fifth, Mr. Maddux contends that the assault statute violates the equal protection

clause because it allows the prosecutor to charge similarly situated defendants with

different degrees of assault.

23

The right to equal protection of the laws may be violated when two statutes criminalize the same acts, but penalize them differently. *State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990). However, "there is no equal protection violation when a statutory scheme proscribes crimes that 'require proof of different elements.'" *State v. Armstrong*, 143 Wn. App. 333, 338, 178 P.3d 1048 (2008) (quoting *Leech*, 114 Wn.2d at 711). "When the crimes have different elements, the prosecutor's discretion is not arbitrary but is constrained by which elements can be proved under the circumstances." *Id.* Accordingly, we consider whether "the crimes that the prosecuting attorney has the discretion to charge require proof of different elements." *Leech*, 114 Wn.2d at 711.

Mr. Maddux's equal protection argument fails. "'[T]he equal protection guaranties are not contravened if the statutes require proof of different elements in order to convict for each offense.'" *State v. Cook*, 26 Wn. App. 683, 685, 614 P.2d 215 (1980) (quoting *State v. Burley*, 23 Wn. App. 881, 883, 598 P.2d 428 (1979)). "Each degree of assault requires proof of distinct essential elements." *Id.* Thus, the assault statute does not violate equal protection.

6.      *Whether a factual basis exists for the plea for second degree assault*

Sixth, Mr. Maddux contends that his guilty plea is invalid because there was no factual basis to support the plea to second degree assault.

Before accepting a guilty plea, the trial court must be satisfied that a factual basis exists for the plea. CrR 4.2(d). "In determining whether a factual basis exists for a plea,

24

the trial court need not be convinced beyond a reasonable doubt that the defendant is in fact guilty." *Saas*, 118 Wn.2d at 43. "Rather, a factual basis exists if there is sufficient evidence for a jury to conclude that the defendant is guilty." *Id.* The court may consider any reliable source of information to determine whether sufficient evidence exists to support the plea, as long as it is made part of the record at the time of the plea. *Osborne*, 102 Wn.2d at 95.

The State charged Mr. Maddux with second degree assault under RCW 9A.36.021(1)(c). The information alleged that Mr. Maddux intentionally assaulted Mr. Baker with a deadly weapon. An item is a deadly weapon if, under the circumstances in which it is used, it is readily capable of causing death or substantial bodily harm. RCW 9A.04.110(6). When a weapon is not deadly per se, the inherent capacity and the circumstances in which the weapon is used determine whether it is deadly. RCW 9A.04.110(6). Circumstances include "'the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injures it inflicted.'" *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972) (quoting *People v. Fisher*, 234 Cal. App. 2d 189, 193, 44 Cal. Rptr. 302 (1965)). Ready capability is determined in relation to surrounding circumstances, with reference to potential substantial bodily harm. RCW 9A.04.110(6). "'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which

25

causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

Pertinent to Mr. Maddux's offense, assault is an act by the defendant done with the intent to create a reasonable apprehension and fear of bodily injury in another, and which in fact creates a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury. WPIC 35.50.

Here, a factual basis existed for Mr. Maddux's guilty plea. At the plea hearing, the trial court required the State to recite the evidence to support the charge for second degree assault. The evidence presented by the State was sufficient to establish that Mr. Maddux acted with the intent to create a reasonable apprehension in the mind of Mr. Baker. The evidence shows that Mr. Maddux approached Mr. Baker's car unexpectedly and yelled, using profane language. With a knife in his hand, Mr. Maddux tried to enter Mr. Baker's vehicle and when unsuccessful, forcefully banged on the window with the knife. Mr. Baker stated that he felt that he would be assaulted if Mr. Maddux entered the vehicle. While Mr. Maddux claims that he did not have intent to cause reasonable apprehension in Mr. Baker, the evidence is sufficient for a jury to conclude that Mr. Maddux acted with intent.

The State's evidence was sufficient to support the deadly weapon element as well. The jury could conclude from the evidence that the knife was a deadly weapon per se. Mr. Maddux produced a knife and held it in his hand with the blade up so that Mr. Baker

26

could see it. He also banged on the window with the knife with enough force to cause scratches to the window. Mr. Baker felt like he would be assaulted by Mr. Maddux. Given the amount of force Mr. Maddux used in wielding the knife, his aggression toward Mr. Baker, his intent to contact Mr. Baker inside the vehicle, and the ready capability of a knife to cause substantial bodily harm, a jury could conclude that Mr. Maddux assaulted Mr. Baker with a deadly weapon. A factual basis exists to support Mr. Maddux's guilty plea for second degree assault.

7.      *Whether the court neglected Mr. Maddux's constitutional civil rights by not acting on Mr. Maddux's complaints about access to the jail's law library*

Last, Mr. Maddux contends that the trial court neglected its duty to protect his constitutional rights when it failed to address Mr. Maddux's lack of access to a law library.

Prisoners have a "fundamental constitutional right of access to the courts," which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). However, this right "ensure[s] a meaningful *pro se* defense." *State v. Bebb*, 108 Wn.2d 515, 524, 740 P.2d 829 (1987) (emphasis added). Mr. Maddux was represented by counsel. Thus, he was not denied legal access to the courts even though the jail's legal library had extremely limited capabilities. The trial court did not violate Mr. Maddux's rights.

27

No. 33230-6-III
*State v. Maddux*

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, A.C.J.

Korsmo, J.